387 P.2d 888

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Emerson M. TOPE, Defendant-Appellant.**

**No. 9163.**

Supreme Court of Idaho.

Dec. 26, 1963.

Allan G. Shepard, Atty. Gen., R. La Var Marsh, Asst. Atty. Gen., Harold A. Ranquist, Louis H. Cosho, Boise, for respondent.

Henry F. Reed, Kent Power, Boise, for appellant.

464

KNUDSON, Chief Justice.

Appellant-defendant was charged with and convicted of the crime of lewd and lascivious conduct with a minor female under the age of 16 years, in violation of I.C. § 18–6607. From a judgment of conviction this appeal is taken.

Appellant contends that there was no corroboration of the act of lewd and lascivious conduct or that appellant committed such act; that the court erroneously instructed the jury, after reporting that they had been unable to agree on a verdict.

We shall first consider appellant's contention that there was a lack of corroboration of the testimony of the complaining witness. In State v. Madrid, 74 Idaho 200, 259 P.2d 1044, this court stated:

"In harmony with the declared public policy of this state with reference to the necessity of corroboration of testimony of the complaining witness in such sex crimes, we hold that the testimony of the prosecuting witness in the prosecution for lewd and lascivious acts must be corroborated either by direct evidence or evidence of surrounding circumstances which clearly corroborate the statements of the complaining witness under the rule as laid down in the case of State v. Elsen, supra [68 Idaho 50, 187 P.2d 976], in order that a conviction under the act may be sustained."

The rule above referred to as having been laid down in the case of State v. Elsen, 68 Idaho 50, 187 P.2d 976, is therein stated as follows:

* * * "If the character or reputation of the prosecutrix for truth and chastity is unimpeached, and her testimony is not contradictory nor inconsistent with the admitted facts of the case, and is not inherently improbable nor incredible, there can be either direct evidence corroborating her testimony, or evidence of surrounding circumstances clearly corroborating her statements. Either will suffice. If, however, her character or reputation for truth and chastity, or either, is impeached, or her testimony is contra-

dictory or is inconsistent with the admitted facts of the case, or is inherently improbable or incredible, then there must be direct evidence corroborating her testimony."

It should be here noted that the rule quoted from the Elsen case has been modified to the extent that the majority of the court in State v. Madrid, supra, held that the general reputation of the victim's lack of chastity is not grounds for impeachment and is immaterial to the issues. In the instant case the prosecutrix, Shirley Swett, was only 10 years of age and her character or reputation for truth and chastity was in no respect impeached nor was her testimony contradictory or inconsistent with any admitted facts of the case. Under these circumstances the testimony of the prosecuting witness may be corroborated by direct evidence or evidence of surrounding circumstances.

The prosecutrix testified that between 12:30 and 1:00 o'clock p. m. on August 2, 1961, she and her two brothers left their home to go to a swimming pool on Elk Creek near Idaho City; while she was at the swimming pool appellant arrived and inquired regarding the water and "just sat around there" for awhile; later he gave the prosecutrix and others some white and brown coconut balls of candy; shortly thereafter appellant said "he was going to go put on his swimming suit and took off"; that the next time she saw him she and her

brother Wayne (8 years of age) were on their way home when he came out of the bushes and asked if she wanted to go over to a little pool; when she replied that she didn't want to go he (appellant) grabbed them (Shirley and her brother Wayne) and carried them into some bushes; that he then made them lie down and while gesturing with his fist told them: "If you don't mind me I will hurt you." That he jerked her blouse off and ripped it, and also took off her other clothing, following which he exposed himself and engaged in lewd and lascivious acts; that as soon as appellant left she went directly home, arriving at approximately five minutes past 3:00 p. m., and told her mother what had happened.

The prosecutrix further testified that appellant was wearing an orange-colored shirt and dressy gray pants and green tennis shoes; that she saw appellant's automobile and described it as a bluish-gray station wagon trimmed in white.

Mrs. June Swett, mother of the prosecutrix, testified that her daughter Shirley arrived home at about 3:00 p. m. on the afternoon of August 2, 1961, at which time she was very upset and had a terrified look on her face; that she cried while telling what had happened to her.

Mrs. Swett further testified that when her daughter Shirley left home to go swimming on that day she wore a pair of shorts and a little blouse over her swimming suit;

that her blouse, at the time she left to go swimming, was in good condition, not torn and the buttons were all on it. The blouse was admitted in evidence as State's Exhibit No. 7. Mrs. Swett also testified that after hearing the child's story she promptly contacted the sheriff.

Mr. John W. Williams, Sheriff of Boise County, testified that he received a call from Mrs. June Swett at approximately 3:15 p. m. on August 2, 1961, and that he immediately went to the Swett home where he talked with Shirley; that Shirley at that time was wearing the blouse identified as State's Exhibit No. 7, which was on that day turned over to the sheriff, in whose possession it remained until the trial. Said blouse was torn in two places, under the right armhole and in the back. The lower three of the five brass buttons which were on the front of the blouse were missing from the garment. The remaining two buttons were sewn on with white thread.

Mr. Williams further testified that after talking with Shirley he, in company with Shirley, went to a point on Highway No. 21 where he examined the area for automobile tracks; that he then went to a place on Elk Creek which is approximately 150 yards from the swimming pool towards Idaho City, and in an area of willows and brush and a little grass he there observed that the grass and weeds "were matted down as if somebody had been sitting or rolling in that area"; that he there found three buttons (admitted as State's Exhibit No. 2), which are identical to the two remaining buttons on Shirley's blouse, each containing some white thread in the eyelets.

After examining said area the sheriff immediately took Shirley to St. Luke's Hospital where she was examined by Dr. Robert Holdren, whose professional qualifications were admitted. The doctor testified regarding his examination of her as follows:

"Q did you examine her?

"A Yes.

"Q Would you give us your findings?

"A I examined her specifically with reference to female genital organs at which time I found reddening and evidence of irritation of the external genital organs, there was no bleeding at the vaginal orifice but there was evidence of irritation.

"Q Caused by trauma, doctor?

"A Caused by trauma, yes.

"Q Did this appear to you to be of recent origin?

"A It was of recent origin, yes."

Myrtle Pennington, who with her husband operates a general merchandising store in Idaho City, testified that during the noon hour on August 2, 1961, appellant came to her store and purchased a bag of coconut gems candy; that on the following

Sunday afternoon Mr. Williams, the sheriff, came to her store, at which time she handed him a sack containing the identical kind of candy she had sold appellant on August 2d, which sack was admitted in evidence as State's Exhibit No. 9. Two witnesses besides the prosecutrix identify Exhibit No. 9 as being exactly the same kind of candy appellant offered them at the swimming pool on August 2d.

In further corroboration of the statements of the prosecutrix, two witnesses testified that on August 2d they observed an automobile in the immediate area of the swimming pool involved, which they described as being a two-tone blue and white station wagon with a full mud flap across the rear end of the car; one of which witnesses testified that the car which he had observed in the swimming pool area passed him later in the afternoon near Boise traveling at high speed and that only one man was in the car on both occasions.

The police officer who apprehended appellant on a street in Boise on August 5, 1961, testified that at the time appellant was apprehended he was driving a 1958 Ford station wagon painted blue on top, white in the middle and blue on the bottom, with a full mud flap across the back. He further testified that appellant was "wearing green tennis shoes, * * * a faded yellow, or light orange shirt, and gray slacks."

Four witnesses besides the prosecutrix, ranging from 10 to 18 years of age, testified that they saw appellant at the swimming pool on August 2d and each one unhesitatingly identified him a few days later. Three of said witnesses described appellant as wearing an orange colored shirt and gray pants when he was at the pool. In this connection the sheriff testified that when he first observed appellant at the Boise police station on August 5, 1961, appellant was wearing "a faded orange short sleeved shirt, a pair of gray slacks—pants, and green tennis shoes", which is almost identical to the description originally given to the sheriff by the prosecutrix.

Although the record discloses additional evidence of corroboration we do not deem it necessary herein specifically to refer thereto. While each of these facts and circumstances standing alone may be insufficient to furnish *quantum* of corroborative proof necessary, when taken and considered together they furnish ample evidence of corroboration within the meaning of the rule. This court has stated that no hard and fast rule can be laid down on the subject of corroboration. Each case must depend upon its own merits and surrounding circumstances. State v. Bowker, 40 Idaho 74, 231 P. 706. In the instant case the court properly instructed the jury regarding the nature and extent of corroboration required. It is our conclusion that

the evidence in this case was clearly corroborative of the testimony of the complaining witness, both as to the commission of the lewd and lascivious act and as to the fact that it was appellant who committed such act.

The record shows that at 12:06 p. m. on November 15, 1961, the jury retired to consider their verdict in this case; at 9:18 p. m. on the same day the jury returned into open court and reported to the court that they had been unable to agree upon a verdict. Thereupon the court gave the jury the following additional instruction No. 28:

"Gentlemen:

"The final test of the quality of your services in this case will lie in the verdict which you return to the court, not in the opinions any of you may have held and announced in your deliberations thus far and now may hesitate to recede from because of a sense of pride. Remember that you are not partisans or advocates, but rather judges. Have in mind that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case. To that end, the court reminds you that in your deliberations in the jury room there can be no triumph except in the ascertainment and declaration of the truth.

"I will state again to you that any verdict you reach must be unanimous. And in your deliberations you should examine the issues submitted with a proper regard and consideration for the opinions of each other. You should listen to each others arguments with an open mind, and you should make every reasonable effort to reach a verdict."

The jury then retired to the jury room and at 12:44 a. m. on November 16, 1961, the jury returned into open court and reported that they had agreed upon a verdict of guilty as charged in the information. At the request of counsel for appellant the jurors were then each asked if that was his verdict and each juror answered in the affirmative.

■ Appellant contends that the giving of said instruction No. 28 was prejudicial to him. Appellant does not, in his brief, cite any authorities in support of this contention, and his argument thereon consists of only one sentence stating in substance his contention that the jury were prejudiced by the instructions requiring that they reach a verdict of guilty or not guilty rather than a deadlocked jury. Notwithstanding the fact that appellant's brief does not adequately comply with this court's appellate rule 41, we have considered his said contention. (See also Jewett v. Williams, 84 Idaho 93, 369 P.2d 590.)

The logical reading of the instruction in question reveals that it is not coercive in character nor does it demand or direct that the jury must reach a verdict. It does require that the jury seek to do justice and any verdict they do reach must be unanimous. In considering instructions of a court to a jury they must be considered as a whole, and error cannot be predicated upon a single instruction or part thereof which may be objectionable when not considered in connection with the instructions as a whole (State v. Bowker, 40 Idaho 74, 231 P. 706). All of the instructions given in a case must be read and considered together, and where, taken as a whole, they correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge, and was not misled by any isolated portion thereof. Raide v. Dollar, 34 Idaho 682, 203 P. 469. In the instant case the court adequately and properly instructed the jury that no one instruction embodied all the law in the case and that any single instruction should be considered in connection with all other instructions and construe them in harmony with each other. We find no reversible error in giving the instruction complained of. The judgment is affirmed.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.