587 P.2d 1238

STATE of Idaho, Plaintiff-Respondent,

v.

Dennis ADAIR, Defendant-Appellant.

No. 12374.

Supreme Court of Idaho.

Dec. 15, 1978.

Darrel W. Aherin, Lewiston, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., James F. Kile, Asst. Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Defendant-appellant, Dennis Adair, appeals from a verdict, judgment of conviction and sentence on a charge of forcible rape. Sentenced to serve a maximum indeterminate term of 25 years, he appeals both the conviction and the sentence. The primary issue is whether the admitted intercourse was consensual or forcible.

The prosecution's evidence at trial showed the following: after an evening of moderate to heavy drinking in the company of her parents,[1] the prosecutrix left her father's home shortly after 1:30 a. m. for the clubhouse of a Lewiston motorcycle club. She had previous familiarity with both the clubhouse and its members. The prosecutrix testified that 10 or 15 minutes after her arrival at the clubhouse,

A. There was this girl and she come running out of the bedroom—out of this one room off the kitchen.

Q. When was this?

A. This was not too long after I got there.

Q. And what—can you tell what you observed at that time?

A. Well, I heard some screaming and crying and I didn't really, you know, pay much attention to it because I didn't really know what was going on, you know.

Q. And then what happened?

A. This girl come running out of there and she asked this Bruce Taylor to take her home and he said he wasn't going to take her home so she took off running out of the door.

Shortly thereafter the prosecutrix and Adair left the clubhouse together in search of this woman. While they were driving around, the prosecutrix was told by Adair that he would like to have sex with her. She refused.

They returned to the clubhouse. Sometime later, Adair stated sexual intercourse was about to take place and she was to be part of it. She was picked up bodily by Adair and two other club members and carried through the kitchen and into the bedroom where they threw her down on a bed. In the bedroom Adair and another club member, Daniel Whinery, forcibly removed her jeans and underpants. Following this Adair had intercourse with her in

---

1. She had dinner between 6:30 and 8:00 p.m.; from 8:00 to about 8:30 she had "a couple" screwdrivers, from 8:30 to 11:00 "about four or five" screwdrivers, and from 11:00 that night to 1:00 a.m. two beers.

the presence of Whinery and three other members. According to her testimony, intercourse came about as a result of his hitting, choking and threatening her. She testified that he repeatedly hit her head against the wall, that he hit her in the face with his fist a couple times and then chewed off her earring. She also testified that when Adair was finished, Whinery took Adair's place on the bed, but a well-placed kick brought about his retreat. Then, left alone, she put on her jeans, found her glasses and wig, and left the clubhouse in tears, arriving at her father's house between 4:00 and 4:30 a. m.

Adair testified on his own behalf that the encounter was a mutually consensual act of intercourse and that he did not use force or threat of force.

The admitted act of intercourse was testified to by two other witnesses, Daniel Whinery for the State, under a grant of immunity from prosecution, and Dan Bolen for the defendant. The gist of their stories was that they saw no hitting, choking or other violent behavior toward the prosecutrix, who they said appeared to consent.

## I.

Adair first attacks the sufficiency of the evidence to support his conviction on the grounds that the testimony of the complaining witness was not corroborated to the extent required by prior Idaho cases.[2]

The rule as to corroboration of the complaining witness in sex crime cases was summarized in *State v. Elsen*, 68 Idaho 50, 54, 187 P.2d 976, 978 (1947), as follows:

If the character or reputation of the prosecutrix for truth and chastity is unim-

peached, and her testimony is not contradictory nor inconsistent with the admitted facts of the case, and is not inherently improbable nor incredible, there can be either direct evidence corroborating her testimony, or evidence of surrounding circumstances clearly corroborating her statements. Either will suffice. If, however, her character or reputation for truth and chastity, or either, is impeached, or her testimony is contradictory or is inconsistent with the admitted facts of the case, or is inherently improbable or incredible, then there must be direct evidence corroborating her testimony.

The Court went on to explain the type of evidence required in cases in which the prosecutrix has been impeached:

[T]his case requires evidence other than the testimony of the prosecutrix which in and of itself, and without the aid of her testimony, *tends to support her testimony* that the offense was committed, and which makes it *appear probable* that the accused was the perpetrator.

No hard and fast rule can be laid down on the subject of corroboration. Each case must depend upon its own merits and surrounding circumstances. *State v. Bowker*, 40 Idaho 74, 231 P. 706.

*Id.* at 55, 187 P.2d at 978 (emphasis added).

In the later case of *State v. Goodrick*, 95 Idaho 773, 775, 519 P.2d 958, 960 (1974), the Court was careful to point out that "[t]he use of the phrase 'direct evidence' in the [*Elsen*] summarization is not sustained by holdings of those cases, if the phrase is construed to mean 'testimonial evidence' as opposed to 'circumstantial evidence.'"

2. In rape trials, the "corroboration" rule has come under increasing attack in recent years. *See, e. g.*, Ludwig, The Case for Repeal of the Sex Corroboration Requirement in New York, 36 Brooklyn L.Rev. 387 (1970); Lear, Q. If You Rape a Woman and Steal Her TV, What Can They Get You for in New York? A. Stealing Her TV, N.Y. Times, Jan. 30, 1976, § 6 (Magazine) at 11; Note, Towards a Consent Standard in the Law of Rape, 43 U.Chi.L.Rev. 613, (1976); Note, The Rape Corroboration Requirement: Repeal Not Reform, 81 Yale L.J. 1365 (1972). According to a 1972 survey, 25 states at the time flatly rejected the corrobora-

tion requirement and 10 others, though often using the corroboration language, actually demanded only that a conviction for rape be based upon sufficient evidence. 81 Yale L.J., *supra* at 1367 n. 15. For recent decisions rejecting the requirement, *see United States v. Sheppard*, 186 U.S.App.D.C. 283, 569 F.2d 114 (1977); *People v. Rincon-Pineda*, 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975); *Arnold v. United States*, 358 A.2d 335 (D.C.1976). Since corroboration is present here, we decline to consider in this case whether Idaho should also abandon the requirement.

Adair argues that because the prosecutrix's reputation for chastity was impeached by testimony admitting prior acts of intercourse with other men, under the rule of *Elsen* and *Goodrick*, corroboration by independent evidence is required.

The following facts and circumstances all tend to support the complaining witness' testimony that she was forced to submit to intercourse with Adair. Both of her parents testified that she arrived home dirty, disheveled, bruised and hysterical. The physician who examined the prosecutrix testified that she had numerous bruises, was somewhat tender in the chest and had some small hemorrhages in the whites of her eyes of a type caused by contact of a blunt object with the eye. The police detective who investigated the case photographed her; he testified to observing bruises on the prosecutrix's face and arm, and the pictures he took clearly showed bruises around the left eye and a large bruise on the inside of the upper portion of her right arm. A jury could properly find that such evidence corroborates her testimony that force was used by Adair. Moreover, one of the club members, Daniel Whinery, testified that in events prior to the intercourse, the prosecutrix made a protest to the onlooking group of men which the jury could believe indicated her fear that she was expected to engage in intercourse with not just Adair, but the entire club membership. Adair himself corroborated Whinery's statement that there was such talk:

A. We were small talking but nothing, nothing that I would remember. She—right after we got in there—let's see—we either—we were either in the process of undressing or were undressed and some people standing around the doorway and she said something to the effect of, "You don't expect me to take everybody on; do you?" or something like that, and I replied, "No, nobody does," you know, "this is between you and me."

Adair argues that because Whinery was an accomplice, his testimony must be corroborated. However, the victim of a rape and an accomplice of the defendant may corroborate each other. *State v. Wilson*, 93 Idaho 194, 457 P.2d 433 (1969). Corroboration of an accomplice need only connect the accused with the crime, may be slight, need only go to one material fact, and may be entirely circumstantial. *State v. Bassett*, 86 Idaho 277, 385 P.2d 246 (1963). Here the victim's testimony coincides with that of the accomplice as to the occurrence of the act of intercourse, the time and place of the act, and some of the surrounding circumstances. This is sufficient. Moreover, we note also that the record does not necessarily compel a conclusion that Whinery was an accomplice. Other than that he testified to helping Adair carry the prosecutrix to the door of the bedroom—which Whinery dismissed as horseplay at that point—he gave no testimony tending to show that he used force or made threats in order that Adair might gain his objective. Whinery's presence during the intercourse had by Adair does not appear to mount to his being a threat to the prosecutrix, as expressed by conduct and acts. *State v. Lewis*, 96 Idaho 743, 749, 536 P.2d 738, 744 (1975).

Adair points to conflicts between the testimony of the prosecutrix and that given by Whinery. While it is true that there are major conflicts and contradictions, the record reveals that the accomplice and the prosecutrix also gave fairly similar testimony as to some of the things that occurred and some of the things that were said on the night in question. The fact that their testimony conflicted on the crucial issue of force versus consent does not mean that the remaining corroborative testimony had to be discounted or ignored by the jury. To the contrary,

[t]he mere fact that the testimony of witnesses in a case is sharply conflicting only raises questions as to the credibility of the witnesses and the weight to be given to their testimony. These are matters which are exclusively for the jury to determine.

*State v. Gee*, 93 Idaho 636, 639, 470 P.2d 296, 299 (1970).

The remainder of Adair's corroboration argument amounts to a contention that the State is required to prove its case independently of the prosecutrix's testimony, and that each piece of evidence must independently lead to an inference that a rape was committed by the accused before it is of any value as corroboration. The rule in Idaho is not nearly so stringent or demanding. All of the bits and pieces of evidence may, of course, be taken and considered together by the jury. *State v. Tope*, 86 Idaho 462, 387 P.2d 888 (1963). The testimony of witnesses is ordinarily the crucial evidence in cases such as this, and rightly so. For as was once observed, "If she tells the truth, where is there any better evidence than that of the victim?" *State v. Flitton*, 52 Idaho 374, 377, 15 P.2d 397, 399 (1932). Corroboration is simply corroboration. The required corroboration need only *tend to support* her testimony that the offense was committed and make it *appear probable* that the accused was the perpetrator. *Elsen, supra* at 55, 187 P.2d at 978. Whether there is sufficient corroboration is, in the first instance, a question for the jury; and unless we can say, as a matter of law, that such evidence is insufficient, we will not reverse upon that ground. *State v. Hines*, 43 Idaho 713, 254 P. 217 (1927). We hold that the testimony of the complaining witness was sufficiently corroborated.

## II.

A. Adair also attacks the sufficiency of the evidence on a different approach, arguing that the evidence would have been insufficient had his trial counsel been better prepared and provided a rigorous, aggressive and scrupulous presentation of Adair's case. It is impossible, he argues, to say that the standard of proof beyond a reasonable doubt was truly met when a complete airing of his case was not adequately and fully given. We do not see that the two arguments, ineffectiveness of counsel, on the one hand, and sufficiency of the evidence, on the other, are readily considered together, and especially does this seem so on direct appeal from a conviction.

The standard of appellate review of the sufficiency of the evidence in a criminal case has been stated many times, but most recently in *State v. Erwin*, 98 Idaho 736, 740, 572 P.2d 170, 174 (1977), where we said that "judicial review requires that we peruse that evidence to determine whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt." It is, of course, the exclusive right of the jury to determine the credibility of witnesses and the weight to be afforded evidence, as well as to draw all justifiable inferences from the evidence before them. *Id.* In the case at bar, if the jurors believed the testimony of the prosecutrix, which they were at liberty to do, then, taking that testimony together with the corroborating facts and circumstances which have already been discussed, there was competent and substantial evidence to support the verdict.

B. On the ineffectiveness of counsel issue, Adair argues that there were a number of deficiencies in trial counsel's general conduct of the trial.[3] Most of these alleged deficiencies concern counsel's cross-examination of the prosecutrix. We have examined the record with these allegations in mind and find that they are not supported thereby.

Adair alleges two specific instances of ineffective assistance of counsel, *i. e.*, failure to move for a directed verdict of acquittal at the close of the State's case, and failure to request a jury instruction on the need for corroboration of the accomplice witness, Daniel Whinery.

As to the first of these contentions, the evidence at the time the State rested was sufficient to withstand a motion for directed acquittal, and the failure to

---

3. *On his appeal Adair is represented by counsel other than the attorney who represented him at trial.*

make the motion cannot ordinarily form the basis of an ineffectiveness claim on an appeal. *State v. Kraft*, 96 Idaho 901, 905, 539 P.2d 254, 258 (1975).

■■■■ As to the second contention, were it clear that Whinery was an accomplice of the defendant, which it is not, the trial court would have been obligated to instruct the jury concerning the necessary corroboration of his testimony, had defense counsel requested such an instruction. *State v. Wilson*, 93 Idaho 194, 457 P.2d 433 (1969); *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968). However, under the facts of this case, on an appeal record, we are unable to conclude that the failure of counsel to request an instruction on corroboration would warrant this Court to reverse Adair's conviction on grounds of ineffectiveness of counsel. Whinery's testimony, overall, appearing to be as favorable to Adair as to the State, trial counsel may have very well concluded that it was fruitless to raise the corroboration issue, especially where Adair's defense essentially was that he used no force. Trial counsel may have thought it tactically advantageous to avoid interjecting such an issue, since there was nothing in what Whinery said which would go to proving that Adair accomplished the actual act of intercourse by threat or force. While Whinery *was* there, mere presence at, acquiescence, or silent consent to the commission of an offense is not in and of itself sufficient to constitute one as an accomplice. *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968). *But see State v. Lewis, supra*. On this record, the assignment of error lacks merit, because it has not been established that failure to give an accomplice corroborative requested instruction resulted from "inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *State v. Tucker*, 97 Idaho 4, 10, 539 P.2d 556, 562 (1975); *accord, State v. Perez*, 99 Idaho 181, 579 P.2d 127 (1978).

## III.

■■■■ Adair assigns as error the trial court's failure to instruct the jury on two lesser included offenses, simple assault and assault with intent to commit rape. The State argues that having failed to object to the omissions of these instructions as required by ICR 30, appellant may not raise this error on appeal. Rule 30, as pertinent, reads:

The court shall inform counsel of its proposed actions upon the requested instructions and shall allow counsel a reasonable time within which to examine and make objections outside the presence of the jury to such instructions or the failure to give requested instructions. Such objections shall state distinctly the matter to which he objects and the grounds of his objections, which objections shall be made a part of the record. No party may assign as error any portion of the [charge] or omission therefrom unless he objects thereto prior to the time that the jury is [charged].

The record shows that Adair's trial counsel did submit a request for a single instruction on lesser included offenses.[4] No instructions setting forth the elements of these lesser included offenses were requested. The State submitted 11 instructions related to included offenses, which, however, are not presented in the appeal record. At the conclusion of the trial, the trial judge stated for the record that he had given counsel copies of his proposed stock instructions and had indicated to counsel his tentative decisions on their requested instructions. The court informed counsel that the three of them would discuss the instructions in chambers and "then put it on the record after we've got it narrowed down to just exactly which ones are in dispute."[5]

---

4. *Defendant's requested instruction No. 1 read:*
   You are instructed that the defendant may be found guilty of:
   1) rape as charged
   2) assault with intent to commit rape; or

   3) an assault

5. Some question is raised in the Court's mind as to the wisdom and economy in having both an "on the record" and an "off the record" instructions conference. In *State v. Goodrich*,

Back "on the record" following the conference in chambers, the court inquired of counsel and neither counsel objected to the procedure.[6] The sketchy recapitulation appearing in the record shows that counsel and the court had reached an agreement that lesser included offense instructions would not be given. No reason is given for this decision. Defense counsel acquiesced in the withdrawal of the State's included offense instructions and the refusal to give defendant's requested instruction No. 1. When given the opportunity to state his objections to the court's refusal of requested instructions, Adair's counsel again requested defendant's Nos. 4, 5, 6, 7 and 8 "for the reasons stated in chambers."

Trial counsel, afforded a suitable opportunity to make specific objections to the failure to give requested instructions, did not object to the failure to instruct on lesser included offenses, the issue is foreclosed from assigning the failure to give such instructions as error on appeal. *State v. Collinsworth,* 96 Idaho 910, 539 P.2d 263 (1975).

## IV.

 Finally, appellant challenges his sentence of 25 years in the State Penitentiary as excessive, arguing that 25 years is a "gross penalty to impose for a crime where a raucous situation became out of control." We have carefully reviewed all the evidence pertaining to the facts and circumstances surrounding the crime and also the presentence investigation. We note that appellant is a high school graduate, attended college for one year and has a useful trade.

Although appellant has had frequent brushes with the law since his teen years (mostly traffic violations and one felony), his record does not reveal a pattern of violence. He apparently has no severe psychological difficulties and his chief weaknesses appear to be a fondness for alcohol and an affinity for bad company.

At oral argument, counsel from the Attorney General's Office stated that 15 years would have been an appropriate sentence. Accordingly, it is a concensus of a majority of the Court that a 15-year sentence would be more in keeping with that handed down for similar crimes. *Compare State v. Smoot,* 99 Idaho 854, 590 P.2d 1001 (1978); *State v. Watson,* 99 Idaho 694, 587 P.2d 835 (1978); *State v. Cornwall,* 95 Idaho 680, 518 P.2d 863 (1974); *State v. Ledbetter,* 83 Idaho 451, 364 P.2d 171 (1961), and *State v. Linebarger,* 71 Idaho 255, 232 P.2d 669 (1951), *with State v. Mansfield,* 97 Idaho 138, 540 P.2d 800 (1975), and *State v. Hawk,* 97 Idaho 1, 539 P.2d 553 (1975).

The judgment is hereby modified to provide that Adair serve a sentence of imprisonment in the State Penitentiary for an indeterminate term not to exceed 15 years, and as so modified the judgment is affirmed.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.

97 Idaho 472, 546 P.2d 1180 (1976), the record brought here did not contain counsel's objections relative to some of the instructions given and not given. Only by augmenting the record with affidavits was it ascertained that instructions had been objected to, but the reporter was not present. If counsel agree to the procedure here utilized, it would seem that some risk is taken where the record is made up after the conference.

6. All right. Gentlemen, let's let the record show that we are in session now in respect to a conference on the record on the jury instructions. This follows a conference that we've had in chambers at which we've discussed these instructions that you submitted and the stocks that I have. So I'll now state

into the record our conversations and the results and then give you an opportunity to make such argument on the record as you've already made in chambers.

First of all, now, does either side have any objection to this procedure? Admittedly, its' a summary of what we've done in chambers, but it appears to me that this is the most effective way to handle these instructions conferences and still give you an opportunity to get something on the record.

Do you object to this procedure?

MR. CREASON: The state doesn't object, Your Honor.

MR. MOORER: The defense does not, Your Honor.