701 P.2d 281

**STATE of Idaho, Plaintiff-Respondent.**

v.

**Clifford "Butch" KAY,
Defendant-Appellant.**

No. 14307.

Court of Appeals of Idaho.

May 28, 1985.

Jon J. Shindurling of May, May, Sud-weeks, Shindurling & Stubbs, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Following a jury trial Clifford Kay was convicted for the offense of lewd conduct with a minor child in violation of former I.C. & 18–6607. He has appealed from that conviction raising seven issues: (1) whether the pretrial lineup was unnecessarily suggestive, (2) whether there was sufficient corroboration of the victim's identification of Kay as the perpetrator of the alleged act, (3) whether the testimony presented at trial was sufficient to sustain a conviction, (4) whether the district court erred in denying his motion for judgment of acquittal and for a new trial, (5) whether the prosecutor committed prejudicial error in his statements to the jury during closing argument, (6) whether the district court erred in refusing to give jury instructions concerning eyewitness identification testimony and the burden of proof involved in alibi defenses, and (7) whether the district court erred in its refusal to order that Kay's expert witness fees and the costs of a preliminary hearing transcript be paid with public

funds. We affirm the judgment of conviction.

The alleged incident occurred around midnight, August 1, 1979, while the four-teen-year old female victim was baby-sitting at a residence in Twin Falls, Idaho. The front door to the house was open but the screen door was closed. According to the testimony of the victim, a man came onto the porch with a dog at his side. The girl responded to his knock and opened the screen. The man, who appeared to be intoxicated, asked whether she knew to whom the dog belonged. She bent down to look for an address on the dog's collar. On a metal tag, she noticed an address which later proved to be that of a local veterinarian hospital. Suddenly the man grabbed her in the crotch, and she backed into the house screaming. She tripped and fell and the man again came after her and began strangling her with one hand, trying to remove her pants with the other. The struggle continued into the kitchen, where he struck her repeatedly, beat her head on the floor and threatened her with a small pocket knife. At some point the assailant tore her shirt off. The victim grabbed a broom and then a fork and the assailant fled. The victim identified Clifford Kay as her assailant in a lineup at the Twin Falls Police Department on August 7.

## I

On this appeal, Kay contends the lineup was unfairly suggestive because he was the only participant in the confrontation with faded blue overalls, a suntan and the general appearance of being an outdoor worker, which was how the victim described her attacker. He alleges these were distinguishing characteristics which tainted his identification by the victim. It should be noted that this issue is raised for the first time on appeal. No timely motion to suppress or objection to the evidence was made at the trial level. The lineup was indirectly attacked when defense counsel made a motion for a judgment of acquittal after the close of the state's case. One of defense counsel's several arguments for that motion was that reasonable doubt had been shown, as a matter of law, because the victim's identification of Kay was produced solely through an unnecessarily suggestive lineup. Nevertheless no motion to strike evidence of the lineup identification was ever made.

Idaho Criminal Rule 12 states in relevant part that:

(b) Pretrial motions. Any defense objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following must be raised prior to trial:

. . . .

(3) Motions to suppress evidence on the ground that it was illegally obtained;

. . . .

(e) Effect of failure to raise defenses or objections. Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, or at the time set by the court pursuant to subsection (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Therefore, ordinarily the failure to move to suppress evidence prior to trial pursuant to I.C.R. 12(b)(3) and the failure to object to its admission at trial would prevent us from addressing the issue on appeal. However where a fundamental error has been committed in a criminal trial, this court may consider it even though no objection was made at the trial court. *State v. Le-Page*, 102 Idaho 387, 630 P.2d 674 (1981), *cert. denied*, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *State v. Kelly*, 106 Idaho 268, 678 P.2d 60 (Ct.App.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984). Such fundamental error must have deprived defendant of due process. *State v. Bylama*, 103 Idaho 472, 649 P.2d 1228 (Ct.App.1982). This doctrine of fundamental error is grounded in a criminal defendant's due process right to a fair trial. *State v. Kelly, supra.*

In *State v. LePage, supra,* the Idaho Supreme Court reviewed an alleged error presented for the first time on appeal noting that defendant's right to receive a fair trial might have been impaired. Further, the court noted that cases such as *LePage,* involving evidence of a defendant's inculpatory statements, can be distinguished from the ordinary fourth amendment waiver cases where the evidence is generally nontestimonial and more inherently reliable. The same principles apply to the present case where the evidence is testimonial. The court in *LePage* concluded that it must exercise its discretion to review alleged errors that affect substantial rights. Thus, we are constrained to examine the lineup procedure to determine whether fundamental error occurred, even though the trial court was never presented with a timely motion which could have given that court the opportunity to avoid unfairness to defendant at trial.

■ Our inquiry, then, is whether the alleged suggestiveness of a pretrial lineup could have deprived Kay of his opportunity to have a fair trial, resulting in a denial of due process. In determining whether a confrontation prior to the commencement of a formal judicial criminal proceeding is improper, the test is whether the identification confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he [the defendant] was denied due process of law." *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972) (quoting *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967)). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. at 199, 93 S.Ct. at 382.

■ Kay argues that the other men in the lineup did not have faded worn overalls or the appearance of outdoor workers, resulting in the effect that Kay was the distinctive person. As we have mentioned, no motions to suppress the lineup identification were submitted to the trial court at any time. Neither were any objections made during the trial concerning the victim's identification of Kay as her assailant. Therefore, we have no findings or rulings of the trial court concerning the conduct of the lineup. Fortunately, the police had defense counsel present at the lineup. The police also took photographs of the five persons used in the lineup. We have examined these photographs, as well as the trial testimony, and we conclude that the lineup was fairly conducted.

The other participants in the lineup did not differ so dramatically from Kay as to make the lineup unnecessarily suggestive and conducive to irreparable mistaken identification. All the participants in the lineup were dressed similarly in bib overalls, shirts and baseball-type hats. The fact that three of the other four men in the lineup wore new overalls did not suggest that Kay was the suspect. There was nothing to indicate he would be wearing the identical clothing he wore the night the crime occurred. The general appearance of the subjects was not strikingly different. While none of the other participants was as darkly tanned as Kay, their appearances did not set them off from the suspect.

We briefly note how the *Neil v. Biggers* criteria apply in this case. Here, the victim had a few calm moments while at the front door to closely face, talk to, and to clearly observe the person standing on the porch. The victim's degree of attention toward her assailant would have been strongly riveted once the assault began, even though the following minutes were violent ones. Because the assailant fled that night and eluded capture, it is difficult to assess the accuracy of her description about facial hair and color of the shirt she described. Her first description of height (in feet and inches) varied from Kay's actual height, and much was made of the discrepancy by

defense counsel at trial and on appeal. However, the day after the attack occurred, the victim told police officers she believed her assailant was taller than she had said and she settled on a height that turned out, in fact, to be much closer to Kay's height. She made this change after comparing her attacker's height to that of a police officer who was in her presence. Her other physical descriptions of the assailant, given to police before the lineup occurred, reasonably matched Kay's description. The five-day lapse of time between the on the scene observation and the identification in the lineup was relatively short and should not have impaired the recall of the victim. The victim made a decisive and confident selection, never doubting the correctness of her identification over the course of the trial. Further, the victim testified on the stand that she did not identify the defendant because of his clothes but because of his facial appearance. Weighing all the factors, the court finds no substantial likelihood of misidentification. We conclude that the confrontation was not unnecessarily suggestive. In fact, we believe that the lineup was fairly conducted. It did not deny Kay due process of law.

## II

Kay next contends that the victim's testimony was not sufficiently corroborated. The trial in this case occurred in February 1981 and therefore the rule requiring corroboration of a victim's testimony was in effect. *State v. Byers*, 102 Idaho 159, 627 P.2d 788 (1981); *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982). That rule required corroboration of the victim's testimony both that a crime had been committed and that the accused committed the crime. *State v. Byers, supra.* Kay only contends that there was insufficient corroboration of testimony that he committed the crime. The required corroboration need only tend to support the victim's testimony that the offense was committed and make it appear probable that the accused was the perpetrator. "Whether there is sufficient corroboration is, in the first in-

stance, a question for the jury; and unless we can say, as a matter of law, that such the evidence is insufficient, we will not reverse upon that ground." *State v. Adair*, 99 Idaho 703, 707, 587 P.2d 1238, 1242 (1978). The character or reputation of the victim in this case was unimpeached for truth and chastity and her testimony was not contradictory or inconsistent with the presented facts of the case nor inherently improbable or incredible. Therefore, there can be either direct evidence corroborating her testimony or evidence of surrounding circumstances clearly corroborating her statements. *See, e.g., State v. Adair, supra.*

■ Here there was evidence which tended to support the victim's testimony that it was Kay who perpetrated the alleged act. The corroboration was supplied by a man who had known Kay well for about ten years. They had gone hunting and camping together and had visited in each other's homes. This witness gave a statement to police five days after the incident, placing Kay in the neighborhood where the crime occurred shortly before the victim was attacked. Kay lived some distance away in another part of town. This witness testified that late during the night in question, as he was getting ready for bed, his attention was drawn to his backyard where his dogs were barking. He observed Kay there walking toward the house with a dog. He stepped out his back door and spoke to Kay but "couldn't get an answer out of him." He believed Kay was somewhat intoxicated and he stated that Kay kept one arm up obscuring his face. When the witness reached out and touched Kay's arm, urging Kay to come in for a cup of coffee, Kay took off running. While there were discrepancies between this witness's testimony and that of the victim regarding clothing details and appearance, nevertheless this witness's testimony was substantial evidence that Kay was near the scene of the crime within minutes of its occurrence. His presence there was never explained and was contradicted only circumstantially by Kay's wife who testified

**666**

that Kay left their home only briefly late that night to go to a convenience store.

There was evidence that Kay owned a dog similar to the one the victim described to the police shortly after the attack. The address she remembered from the dog's tag was found to be the address of a Twin Falls veterinary hospital. A veterinarian testified that Kay had brought his dogs to him earlier for rabies vaccinations and had bought collars and received rabies tags with the veterinary hospital's name and address listed on them. Each fact standing alone may be insufficient to furnish the necessary corroborative proof, but taken and considered as a whole they are adequate. *State v. Tope*, 86 Idaho 462, 387 P.2d 888 (1963). We recognize there were conflicts and contradictions among the testimony of the several witnesses at trial. The record nonetheless contains testimony which, if believed, supports the victim's identification of Kay as the assailant. The mere fact that the testimony of witnesses in the case is conflicting in part only raises questions concerning the witnesses' credibility and the weight to be given to their testimony. These are matters which are exclusively for the jury to determine. *State v. Gee*, 93 Idaho 636, 470 P.2d 296 (1970). We have reviewed the transcript of the trial and conclude that the trial court was correct in denying Kay's motion in light of the corroborative evidence in the record.

### III

■ Kay further argues that there was insufficient evidence to sustain the jury's verdict. "A conviction may be based on circumstantial evidence, and the conclusion of guilt may be based on proof of the circumstances and the probable deductions which flow therefrom." *State v. Chapple*, 98 Idaho 475, 476, 567 P.2d 20, 21 (1977). In determining whether the state has proven guilt beyond a reasonable doubt, we are required to review the record to determine whether it contains substantial, competent evidence upon which a jury rationally could have found guilt beyond a reasonable

doubt. This court is precluded from substituting its judgment for that of a jury as to the credibility of witnesses, weight of testimony and reasonable inferences to be drawn from evidence. *State v. Campbell*, 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). The court cannot reweigh the evidence or disturb the verdict when there is competent, though conflicting, evidence to sustain the verdict. *State v. Morris*, 101 Idaho 120, 609 P.2d 652 (1980). From our review of the record we are convinced there was sufficient, substantial evidence of Kay's guilt. Having discussed and eliminated the grounds Kay asserted for his motion for acquittal, we find no merit in his contention that the denial of his motion for acquittal was error.

### IV

■ Kay next states that the trial court erred in not granting his request for jury instructions concerning alibi defenses and eyewitness testimony. A defendant's alibi involves a question of fact to be resolved by the jury, in the course of determining whether the case against the defendant has been proven beyond a reasonable doubt. *State v. Sheehan*, 33 Idaho 553, 196 P. 532 (1921). The jury was properly and adequately instructed by the trial court regarding the burden of proof required of the state. The court gave an instruction listing each element of the crime, telling the jury that the state had the burden to establish each one beyond a reasonable doubt. The court also gave the following instruction:

One of the most important issues in this case is the identification of the Defendant as the perpetrator of the crime. The State has the burden of proving identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the Defendant before you may convict him. If you are not convinced, beyond a reasonable doubt, that the De-

fendant was the person who committed the crime, you must find the Defendant not guilty.

Finally, the court told the jury:

In a criminal case such as this, the burden of proof always rests on the prosecution. They must prove every essential element of the crime beyond a reasonable doubt. This burden of proof on the prosecution to establish the Defendant's guilt beyond a reasonable doubt never shifts. The Defendant is under no obligation to prove his innocense [sic], nor is he under an obligation to prove anything.

The standard Idaho instruction on the principle of reasonable doubt was given to the jury. The presumption of innocence was explained. The jury was instructed that "if, after a consideration of all the evidence in the case, you entertain a reasonable doubt of the truth of any one of these material allegations, then it is your duty to give the Defendant the benefit of such doubt and acquit him." Kay's requested alibi instruction contained no statement of law that was not already adequately covered by other instructions given by the court. *Cf. State v. Elisondo*, 103 Idaho 69, 644 P.2d 992 (Ct.App.1982). Accordingly, we hold that it was not error to refuse to give the requested alibi instruction.

Next we will consider the alleged error in the trial court's refusal of the defendant's several requested instructions on eyewitness testimony. Defendant's proposed instructions dealt with the unreliability in general of eyewitness testimony. These instructions were requested to support the defendant's attempt to persuade the jury not to accept the eyewitness testimony presented in the case. "The requested instructions would have been tantamount to a comment on the evidence, which is impermissible under our practice." *State v. Calegar*, 104 Idaho 526, 528, 661 P.2d 311, 313 (1983). The reliability of eyewitness testimony can be amply and adequately demonstrated to the jury through cross-examination of the eyewitnesses themselves and through argument to the jury. *State v. Calegar, supra.* Here, through defense counsel's efforts, the basis for identification by each eyewitness was carefully probed. Further, in this case an expert on eyewitness testimony was allowed to testify and to relate to the jury her concerns about the reliability of eyewitness testimony. The jury could weigh the identification testimony of the witnesses in light of the information provided by the defendant's expert. As we have already discussed, the jury was instructed that the victim's identification of Kay was not sufficient to convict. It required corroboration by independent evidence. We hold that the instructions given by the court were adequate to afford Kay a fair trial.

V

Kay next contends that the comments by the prosecuting attorney in closing arguments constituted reversible error. Kay argues that the prosecutor made a direct accusation that Kay's wife had failed to bear some kind of burden of proving where her husband had been on the night in question. However, these comments were made during closing argument and the prosecutor prefaced his comments each time with saying that it was the state's responsibility to prove its case and that the state had the burden of proof. The prosecutor is normally given considerable latitude in his argument. He has a right to discuss the evidence and the inferences and deductions arising therefrom. *State v. Sistrunk*, 98 Idaho 629, 570 P.2d 866 (1977). While the prosecutor's remarks were of questionable effectiveness in fulfilling a prosecutor's functions, they come within the bounds of proper comment upon the weakness of the alibi evidence. We do not see sufficient grounds to necessitate a reversal.

VI

Kay finally argues it was error for the district court to deny his motions that the state provide him with expert witness fees and the preliminary hearing transcript. Of

course, the basis of Kay's argument is that he was indigent. We note that Kay filed a companion mandamus action in the Idaho Supreme Court, case no. 14314, to obtain an order for payment of a trial transcript and record for purposes of this appeal. Kay's evidence of indigency in that proceeding, as well as in the present case, stood undisputed, although in the present case the state argues that such evidence did not establish Kay was unable to pay for the services he sought. The question is debatable. Unfortunately, in denying Kay's requests, the district judge made no finding as to Kay's indigency and gave no reasons, on the record, for denying the motions. In our review of this issue we choose to assume, although we do not decide, that Kay was indigent as he has asserted.

 Concerning whether the expert witness fees should be provided by the state, it has been held that this involves the sound discretion of the trial court. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982). Consequently, denial of requests for expert assistance will not be disturbed absent a showing that the trial court abused its discretion. *State v. Hoisington*, 104 Idaho 153, 657 P.2d 17 (1983). It is the trial court's duty to inquire into the needs of the defendant and the circumstances of the case, and then make a determination whether an adequate defense will be available to the defendant without the requested expert testimony. In this case the expert witness' testimony concerned the reliability of eyewitness identification.

 In *State v. Hoisington, supra,* a rape case decided after Kay's trial was conducted, the defendant sought to introduce the testimony of the same expert who testified as Kay's witness in this case. The trial court refused to admit the expert's testimony. On appeal our Supreme Court upheld the ruling, holding that a jury was perfectly capable of assessing the witness's credibility by weighing the inconsistencies and deficiencies elicited in cross-examination without such expert testimony. The same reasons are applicable in the present

case. Numerous other courts have made similar rulings. *Id.* at 165, 657 P.2d at 29. Therefore, even assuming Kay was indigent when the request was made, we hold that the trial court did not err in refusing to provide this expert to Kay at public expense.

 Concerning Kay's request for a preliminary hearing transcript, it has been well established that such a transcript, when alleged to be necessary to the defense, must be included among the services and facilities provided by the state to indigents under I.C. §§ 19-812, 19-852, and under criminal rules then in effect relating to preliminary hearings. *State v. Coronado*, 98 Idaho 421, 565 P.2d 1378 (1977). It would be error to deny an indigent the use of a preliminary hearing transcript. However, in the present case Kay's attorneys made their own arrangements to obtain the transcript and the services of the expert. Ultimately the attorneys bore the costs. Since Kay was provided with both of these disputed services, there is, admittedly, no prejudicial error to Kay and, therefore, no reversible error.

However, on appeal we have been asked to order reimbursement of these costs to Kay's attorneys. The question, then, is narrowed to whether the district court erred by denying the attorneys' requests for reimbursement of the cost of the preliminary hearing transcript. We entertain some doubt as to whether an attorney's claim for reimbursement is a proper subject to be addressed in an appeal from a judgment of conviction. The parties have not briefed this question. Nor have Kay's attorneys shown why they did not include these expenses with those they sought and obtained in the mandamus action. Accordingly, we decline to review the district court's orders.

In summary, we find no reversible error. The judgment of conviction is affirmed.

WALTERS, C.J., concurs.

BURNETT, Judge, specially concurring.

I agree fully with Parts I through V of the foregoing opinion. However, I concur only in the result of Part VI, which discusses the claim by Kay's attorneys for reimbursement of costs incurred below. I entertain doubt as to whether this is a proper issue to be addressed in an appeal from a judgment of conviction in a criminal case. It might better be addressed in a different proceeding. The parties have not briefed this aspect of the issue and my research has not disclosed a definitive rule.

In any event, the record presented to us does not include a finding, nor does it contain evidence sufficient to support an appellate finding, that Kay actually was indigent when the requests for payment of costs were made and denied below. Accordingly, I would decline to review the orders in question.