725 P.2d 128

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Kenneth ESTES, Defendant-Appellant.**

**No. 14647.**

Supreme Court of Idaho.

July 31, 1986.

Rehearing Denied Sept. 19, 1986.

**424**

John C. Hover, McCall, for appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., D. Marc Haws, Deputy Atty. Gen., Boise, for respondent.

BAKES, Justice.

Kenneth Estes appeals from his 1983 conviction for the rape of a Valley County woman. Because we find no merit in Estes' many allegations of error, we uphold the judgment of conviction.

An understanding of the full factual background of this case is necessary in order to fully evaluate the claimed error in this case. In the early morning hours of May 18, 1979, at approximately 2:00 a.m., Julie Ann Somerton, an 18 year old who was working in Cascade, Idaho, and staying at the Cascade Hotel, was raped. Immediately after the rape, Ms. Somerton told the bartender that Estes was her assailant. Ms. Somerton was readily able to identify Estes because the evening before Estes had offered to buy her a drink at the bar, which she had declined.

Later that same night Estes was arrested while he slept in his car on a road outside of McCall, Idaho. He was charged with assault with the intent to commit rape, and rape. Charles Nicholas was appointed to defend him. Prior to trial, Estes was released on $35,000 bond. After Estes expressly waived his right to a speedy trial, trial was set for November 29, 1979.

At trial, Julie Somerton testified as a witness for the state. She testified that Estes had entered her room and forcibly raped her four times. She also testified that Estes had accomplished this by holding a knife to her throat and threatening to kill her. She further testified that after Estes left she screamed for help.

Many parts of Julie Somerton's story were corroborated by testimony from Mr. Kirtland Kitchen, the bartender at the Cascade Hotel. Kitchen testified that, during the evening prior to the rape, Estes had offered to buy Julie a glass of wine. Kitchen also testified that Estes later in-

quired as to Julie's room number, and had purchased a bottle of Julie's favorite wine. He stated that after hearing Julie's screams he heard someone running down the stairs and an automobile leaving. He stated that he later noticed that Estes' car, which had previously been parked in front of the hotel, was gone. Kitchen also testified that at approximately 1:00 a.m. Estes had rented a room for the night and had been given a room four or five doors from Julie's apartment.

Estes, testifying on his own behalf, completely denied any involvement with the victim. While admitting that he had considered going to Julie's room, he stated that he had thought better of it and ultimately decided to leave the hotel. He testified that although he had just paid for a room, at 2:00 a.m. he decided to drive the 30 miles to McCall because he wanted to submit an application for employment at the Shore Lodge. Estes claimed that he had merely decided not to use the room. In his testimony, Estes admitted that at the time he was apprehended, while sleeping in his car outside McCall, he was in possession of a pocket knife like the one used in the rape of Julie Somerton. He also admitted that at the time of his arrest he had only $9.91 in his possession.

At his first trial, Estes called two witnesses on his behalf. The first witness, a friend of Estes, admitted on cross examination that he could recall none of the events of the evening of May 17, 1979, or the early morning hours of May 18, 1979. The second witness testified that Estes was not the man that the witness had seen outside Julie Somerton's room the night of the rape. However, on cross examination, the witness admitted that the light had been poor, that he had been drinking and was groggy, and that he had not been wearing his glasses. The testimony which this witness presented at trial differed substantially from the information the witness had given to the police the night of the rape.

After a three-day trial, the jury returned a verdict finding Estes guilty of rape. Estes remained free on bond pending sentencing. On January 7, 1980, District Judge Walters sentenced Estes to a ten year indeterminate sentence in the Idaho Penitentiary.

After the sentencing hearing, James Schoenhut was appointed to represent Estes on appeal. An appeal was filed and ten days later, on January 17, 1980, Estes was again released on bond pending his appeal. Subsequently it was determined that only part of the transcript could be located. The portion of the transcript containing the testimony of seven of the state's witnesses could not be located.[1] Accordingly, this Court vacated the district court's judgment and remanded the cause for a new trial. Meanwhile, Estes remained free on bond.

A new trial was set for January 31, 1983. At this trial Estes was represented by Schoenhut, his counsel in the earlier appeal. The record contains an affidavit from Schoenhut stating that the partial transcript of the first trial was available to Schoenhut and that Schoenhut extensively studied that transcript. That transcript included the testimony of the victim, Julie Somerton.

At the second trial, Julie Somerton again testified for the state, with Kitchen corroborating her story. The state similarly reintroduced expert testimony seeking to link Estes to the rape. Estes also testified on his own behalf again. However, the two witnesses who had formerly testified for Estes did not testify at this second trial.

On February 2, 1983, a jury again returned a verdict of guilty as to the crime of rape. It was at this time that Estes was actually taken into custody. Then, on March 4, 1983, Estes was resentenced, receiving a seven year indeterminate sentence.

---

1. The tape containing testimony of state's witnesses John H. Moser, Raymond Tracy, Lawrence S. Olson, Barry W. Brightwell, Gary E. Mills, Ann Bradley and Pam Southcomb was inadvertently erased before it was transcribed. The remainder of the trial was transcribed and is available.

On March 16, 1983, Schoenhut filed a notice of appeal on Estes' behalf. On June 10, 1983, Estes filed a *pro se* motion for post conviction relief alleging, *inter alia,* inadequacy of counsel. Subsequently, John Hover, Estes' present counsel, was appointed. Hover has represented Estes both on the second appeal and in the post-conviction proceeding.

On July 9, 1984, the district court denied Estes' motion for post conviction relief on several grounds but left open, pending an evidentiary hearing, the question of whether Estes had effective assistance of counsel. On November 14, 1984, Estes filed a motion for a new trial pursuant to Idaho Criminal Rule 34. After an evidentiary hearing, the district court, on February 20, 1985, denied Estes' motion for a new trial as well as Estes' motion for post conviction relief. In this opinion, we consider only the issues raised in Estes' direct appeal from his conviction. The appeals from the district court's denial of Estes' petition for post conviction relief and denial of his motion for new trial are considered in *Estes v. State,* 111 Idaho 430, 725 P.2d 135 (1986).

I

██ Estes alleges that he was somehow prejudiced by the partial loss of the transcript from his first trial in 1979. Since the record clearly reflects that Estes was awarded a new trial because the transcript was missing, we fail to see how the loss of the transcript possibly prejudiced his case. In fact, it is difficult to view the loss of the transcript as anything but a windfall for Estes. Not only did the lost transcript result in a retrial for Estes, providing him with a second opportunity to vindicate himself, but the sentence imposed upon Estes after the second conviction was three years shorter than the sentence imposed after the first trial. Moreover, Estes remained free on bail until the jury in the second trial

returned a guilty verdict. Accordingly, we reject this argument as being completely frivolous.

II

██ Nor do we find merit in Estes' allegation that insufficient evidence was presented to corroborate Julie Somerton's testimony that Estes was her assailant. In support of his position, Estes relies upon *State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981).[2] In *Byers,* this Court reversed the defendant's conviction for rape because of significant discrepancies between the victim's uncorroborated description of her assailant and the defendant's physical characteristics. Specifically, the victim's description of her assailant in *Byers* as being 5' 6", 175–180 lbs, heavyset with a pot belly and with black collar-length hair, conflicted with *Byers'* actual physical description. In fact, the evidence indicated that Byers was 5' 9", weighed 185–190 pounds, without a pot belly, and always wore his hair short. Such an obvious discrepancy between the victim's description and the defendant's physical characteristics is not present in this case.

Moreover, it is clear that in this case there is more than adequate corroboration for Julie Somerton's testimony. As this Court stated in *State v. Adair,* 99 Idaho 703, 587 P.2d 1238 (1978):

"All of the bits and pieces of evidence may, of course, be taken and considered together by the jury. *State v. Tope,* 86 Idaho 462, 387 P.2d 888 (1963). The testimony of witnesses is ordinarily the crucial evidence in cases such as this, and rightly so. For as was once observed, 'If she tells the truth, where is there any better evidence that of the victim?' *State v. Flitton,* 52 Idaho 374, 377, 15 P.2d 397, 399 (1932). Corroboration is simply corroboration. The required cor-

2. In *State v. Byers, supra,* this Court adopted the rule that corroboration is generally not required to support a conviction for rape. This rule, the Court stated, was to be applied prospectively to criminal trials commencing after the *Byers* opinion was issued. *State v. Byers,* 102 Idaho at 167,

627 P.2d at 796. Since the first trial in this case occurred before the Court decided the *Byers* case and changed the rule requiring corroboration, the district court and the parties agreed that the corroboration rule was applicable to Estes' second trial.

roboration need only *tend to support* her testimony that the offense was committed and make it *appear probable* that the accused was the perpetrator. [*State v. Elsen,* 68 Idaho 50, 55, 187 P.2d 976, 978 (1947).] Whether there is sufficient corroboration is, in the first instance, a question for the jury; and unless we can say, as a matter of law, that such evidence is insufficient, we will not reverse upon that ground. *State v. Hines,* 43 Idaho 713, 254 P. 217 (1927)." *State v. Adair,* 99 Idaho at 707, 587 P.2d at 1242 (emphasis in original).

The evidence in this case, taken together, is more than ample to justify Estes' conviction. The evidence reflects that defendant Estes approached the victim earlier in the evening of the rape trying to buy her a drink in the hotel bar, and then later in the evening, shortly before the rape occurred, asked the bartender what her room number was. He then checked into the hotel, bought a bottle of wine which he had been advised was her favorite brand, and went upstairs from the bar to where both his room and the victim's room were located. Approximately an hour later, the bartender heard the victim's screams, heard someone running down the stairs, and observed that Estes' automobile, which had been parked in front of the hotel, was gone. Within a short time thereafter the defendant was found sleeping in his car near McCall, Idaho, in possession of a knife substantially identical to that described by the victim shortly after the rape. The victim was clearly able to identify the defendant Estes as the rapist because of his earlier attempts in the evening to befriend her. This evidence is more than sufficient to corroborate the victim's testimony. *See State v. Adair, supra.* Accordingly, there is no justification for overturning the jury's verdict, which necessarily indicates that the jury also felt that Julie Somerton's story was sufficiently corroborated.

### III

▪ Estes also alleges that the trial court erred by refusing to require the pros-

ecution to elect which of the four acts of sexual intercourse forcibly committed upon Julie Somerton it would rely on in seeking to prove the crime of rape. He argues that although each of these acts constituted a separate rape, he was charged with only one count of rape. Estes argues that Idaho Criminal Rule 8 requires that each crime be charged in a separate count, thus rendering the information inadequate and mandating dismissal.

We find no merit in Estes' argument. Estes reads I.C.R. 8 much more rigidly than this Court has. *See State v. Schwartzmiller,* 107 Idaho 89, 92–93, 685 P.2d 830, 834 (1984) (no error in joining offenses constituting parts of a common scheme). Although four acts of sexual penetration occurred, they were part of one continuing transaction. The separate penetrations were not separate acts at different times, in different places, with different actors or circumstances. Moreover, the jury was instructed, "In this case, evidence has been admitted that the prosecuting witness was sexually penetrated up to four times at the time of the incident in question. If you find that the prosecuting witness was sexually penetrated one or more times at the time of the incident in question, then you are to regard the matter as a continuing single incident rather than one, two, three or four separate incidents." Jury Instruction No. 31. It is clear from this instruction that, regardless of the number of specific instances of sexual penetration, Estes was tried on, and convicted of, one count of rape.

### IV

Estes also raises the issue of prosecutorial misconduct. In support of this allegation, Estes cites us to a number of specific instances which he alleges demonstrate this misconduct. Having carefully considered each of these issues, we find no merit in any aspect of this argument.

▪ While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he is nevertheless ex-

pected and required to be fair. *State v. Griffiths,* 101 Idaho 163, 166, 610 P.2d 522, 525 (1980). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial. *See Bruton v. United States,* 391 U.S. 123, 125, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). Because we take into account the reality of the human fallibility of the participants, a harmless error standard is applied when reviewing allegations of prosecutorial misconduct. Unless we are convinced that there is a reasonable possibility that the prosecutorial misconduct complained of materially contributed to the guilty verdict in the case, we will not reverse on the basis of prosecutorial misconduct. *State v. Griffiths,* 101 Idaho at 167, 610 P.2d at 526; *State v. Smoot,* 99 Idaho 855, 861, 590 P.2d 1001, 1007 (1978). Since the record sustains the trial court's finding that Estes' conviction was the result of the strong identification testimony of the victim, which was corroborated by other witnesses at the scene, and Estes' totally unbelievable alibi, Estes shoulders a difficult burden when he attempts to persuade us that prosecutorial misconduct prejudiced his case.

■ Estes alleges prosecutorial misconduct in the prosecutor's failure to call the county engineer to testify during the trial. He points out that although the prosecutor originally intended to call the county engineer, and so notified Estes, the prosecutor then, without excuse, failed to call the engineer to testify. Without fully explaining the significance of the county engineer's testimony, Estes merely states, "Appellant is left to speculate what evidence might have developed should the prosecutor have kept his agreement." We find no error or prosecutorial misconduct in the prosecutor's failure to call this witness. The prosecution is not required to place on the witness stand any particular witness, and if Estes had desired the county engineer's presence, he should have summoned the county engineer to testify. *State v. Drapeau,* 97 Idaho 685, 690, 551 P.2d 972, 977 (1976).

■ Estes also alleges prosecutorial misconduct in the prosecutor's questioning of Estes as to the reasonableness of Estes' renting a room at the Cascade Hotel and leaving the room unused when he decided to proceed to McCall. Estes claims that this line of questioning is directly contradictory to the prosecutor's insistence that the state would not ask for a "flight instruction" for the jury. We disagree.

Read in context, it is clear that the prosecutor was attempting to point out how totally unbelievable Estes' alibi was. The prosecutor's line of questioning clearly focused on how absurd it would have been for Estes to have rented a room at the Cascade Hotel, using most of his cash on hand to pay the rental rate, and then almost immediately leave the room unused to proceed to McCall in the middle of the night to sleep in his car. The focus of the prosecutor's questioning was not upon Estes' attempts to flee the scene of the crime, but upon the absurdity of his alibi. Moreover, Estes has totally failed to indicate any way in which this line of questioning prejudiced his case. Absent such a showing, we decline to find prosecutorial misconduct.

■ Nor do we find merit in Estes' other allegations of prosecutorial misconduct. These allegations of prosecutorial misconduct center around alleged improper questioning of witnesses and improper closing argument. In considering these allegations, the general rule is that in the absence of a timely objection to alleged error at trial, this Court will not consider such alleged error on appeal. *State v. Sharp,* 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980). Trial counsel's decision not to object to particular statements by the opposing party often represents a strategic move. Since the United States Supreme Court has required this Court to recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984), we pre-

sume that a strategic decision was made at trial not to object to any of the questioning which Estes now claims was improper.

As to the prosecution's allegedly improper closing argument, this Court has stated, "Counsel for both sides have traditionally been afforded considerable latitude in their arguments to jury and have the right to discuss fully, from their respective standpoints, the evidence and the inferences and deductions therefrom." *State v. Sistrunk,* 98 Idaho 629, 630, 570 P.2d 866, 867 (1977). Our review of Estes' alleged incidents of improper conduct during closing argument serves only to convince us that the remarks of the prosecutor were within the traditionally broad scope afforded counsel in closing arguments.

## V

Finally, Estes alleges that his conviction should be reversed because defense counsel at the second trial provided inadequate representation. However, by stipulation, the parties agreed to reserve this issue. This issue is extensively discussed in this Court's disposition of Estes' appeal from the district court's denial of his petition for post conviction relief. *See Estes v. State,* 111 Idaho 430, 725 P.2d 135 (1986).

Since we find no merit in Estes' many allegations of error, we uphold the judgment of conviction and the sentence imposed.

DONALDSON, CJ., and SHEPARD, J., concur.

HUNTLEY, Justice, dissenting.

See my dissent in *Estes v. State,* 111 Idaho, 430, 725 P.2d 135 (Idaho 1986) which explains my reasons for dissenting in both that case and in this one.

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting from denial of Petition for Rehearing.

Three members of this Court today close the state avenues of appeal for Mr. Estes by refusing to rehear appeals of both his conviction for rape and his petition for post-conviction relief and denial of a motion for a new trial. The majority takes this action despite the fact that Estes' counsel has directed the Court's attention to the recent case of *Kimmelman v. Morrison,* — U.S. ——, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). The *Kimmelman* case was neither briefed nor argued when these appeals were first heard.

In *Kimmelman,* the United States Supreme Court was confronted, as we are here, with a claim of ineffective assistance of counsel in a rape trial. There defense counsel conducted no pretrial discovery which led to the "surprise" introduction of an illegally seized bedsheet that contained incriminating evidence. Here Estes' counsel at his trial conducted little or no discovery, did not investigate the sexual background of the prosecutrix in preparation for cross-examination, and did not prepare to counter the introduction of incriminating scientific evidence of the state. In affidavits submitted in support of Estes' motion for a new trial, two of the state's scientific experts explained that the results were inconclusive at best and possibly exculpatory. Yet, due to ineffective cross-examination, the weakness of this evidence was never adequately presented to the jury.

In *Kimmelman,* the Court agreed with the lower court that the first requirement of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1976), incompetence of counsel, was met and remanded for a determination of the other *Stickland* requirement that the defendant had been prejudiced by his attorney's incompetence. Yet this Court, when presented with defense counsel sins much more egregious than those established in *Kimmelman* refuses to reconsider Estes' appeal in light of the recent guidance provided by our brethren in Washington, D.C.

Once again this Court avoids facing up to its own responsibilities in favor of letting "George" do it.