827 P.2d 686

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeffrey L. GRINOLDS, Defendant–Appellant.**

**No. 18146.**

Supreme Court of Idaho,
Lewiston, April 1991 Term.

Feb. 27, 1992.

**674**

Bowles & Beck, Moscow, for defendant-appellant. Allen V. Bowles, argued.

Larry J. EchoHawk, Atty. Gen., and Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent. Jack B. Haycock, argued.

PER CURIAM.

The information charged defendant with two counts of rape, alleging that the victim was under the age of eighteen, and also that sexual intercourse was accomplished by force in violation of sections (1) and (3) of I.C. § 18–6101. The second count was allegedly "separate and distinct temporally and physically from the act described in Count I." Grinolds pled not guilty. He was tried jointly with codefendant Lonnie Powers. The jury found him guilty of only statutory rape, but also found that he had in fact committed two separate and distinct acts of intercourse with the victim. He was sentenced to a term of four years fixed and eight years indeterminate on Count I, and to a term of one year fixed and two years indeterminate on Count II, with the sentence on Count I to run consecutively to the sentence on Count II.

On November 27, 1988, Grinolds, Powers, and two friends gathered at Grinolds' mobile home for a party. Early in the evening the victim, a fourteen-year-old girl, joined the party, and they all consumed alcohol. Later, they left Grinolds' home and went to a bar where they continued to drink. The girl testified that her drinks were purchased by Grinolds, and that he handed them to her. She testified that she remembered leaving the bar but remembered nothing else until she awoke in a bedroom in Grinolds' trailer with Grinolds having sexual intercourse with her. She did not remember how her clothes were removed. She testified that she told Grinolds "no," but after struggling with him, "gave up." She testified that Powers then had sexual intercourse with her, and then Grinolds had intercourse with her again. Tr. Vol. I, 150–53.

Also present in the trailer were Garry Bostick and James Teal. Bostick testified to a sequence of events as follows: the four men returned from a bar to the trailer without the girl and then later went out for a joy ride which included purposely driving over some street signs, after which they returned to the trailer; Bostick discovered the girl naked in bed in the bedroom and quickly so informed the others; Grinolds

and Powers went to the bedroom, and after a few minutes Bostick went to the bedroom and saw Grinolds having sexual intercourse with the girl; Bostick returned to the front room, and a few minutes later Grinolds and Powers came out; after the passing of an unspecified amount of time Grinolds and Powers returned to the bedroom; Bostick went to the bedroom a few minutes later and saw Grinolds again having sexual intercourse with the girl and observed the girl perform fellatio on Powers. Tr. Vol. I, 62–74.

■ Grinolds contends that his constitutional and statutory protection against double jeopardy was violated by reason of being charged with and convicted of two separate acts of rape that were not separate in time or place. He asserts that he engaged in only one act of sexual intercourse, during which he stopped, and then after a brief interruption, he continued the act. The State contends that the testimony of its witnesses established that Grinolds had sexual intercourse with the girl, that Powers then had intercourse with her, which was followed by another act of intercourse between Grinolds and the girl. Because the jury by its verdict acquitting Powers of the charge of rape found that Powers did not have intercourse with the girl, Grinolds contends that there was no separate intervening act of intercourse, and hence Grinold's sexual activity with the girl was but one continuing act of intercourse which involved two penetrations of the same person in the same place and on the same day, *i.e.,* a continuing transaction.

Grinolds directs our attention to *State v. Estes,* 111 Idaho 423, 725 P.2d 128 (1986), where the defendant was convicted of rape and on appeal contended that the trial court erred in its refusal to require the prosecutor to elect which of several acts of sexual intercourse was relied on to prove the crime. The victim testified that the defendant entered her room and raped her four times. This Court held: "Although four acts of sexual penetration occurred, they were part of one continuing transaction. The separate penetrations were not separate acts at different times, in different places, with different actors or circumstances." *State v. Estes,* 111 Idaho at 427, 725 P.2d at 132.

Testimony presented at trial in the person of Gary Brent Bostick established to the satisfaction of the jury that Grinolds had intercourse with the girl in the bedroom, then left the bedroom and went to the living room for an unspecified period of time, and then returned to the bedroom and again engaged in sexual intercourse with the girl. The jury was instructed that the state had to prove beyond a reasonable doubt that the second act of intercourse was separate and distinct from the act alleged in Count I. Tr. Vol. II, 362.[1] The jury was properly instructed, and there is substantial evidence in the record supporting its finding that there were two separate and distinct acts of rape.

■ The defendant asserts that two instances of prosecutorial misconduct require that his conviction be vacated and the case be remanded for a new trial. One instance occurred when the prosecutor in his closing argument made a reference to the codefendant Powers not taking the stand:

If Lonnie Powers was to be consistent with his opening statement, that is, that he wants to be up front, and he wants to be open and honest with you, and he wants all the truth to come out, then he would have stood here today, through his attorney, and said, find me guilty of lewd conduct.

Tr. Vol. II, 377. Grinolds argues that this statement, although not directed at him, inferentially was a comment reflecting on Grinolds not taking the stand—since he, too, like Powers chose not to testify. In its order denying defendant's motion for a new trial the district court noted that the closing argument was directed at Powers, not at Grinolds, and that the statement was

---

1. This Court held in a larceny case that it was a jury question whether the value of a series of thefts should be aggregated into a single count of theft because the thefts were part of a common scheme, or should they be treated as separate crimes. *State v. Lloyd,* 103 Idaho 382, 647 P.2d 1254 (1982).

in essence no more than an argument that Powers' attempt to place culpability on the victim lacked candor. The court further noted that the jury was instructed that they were to draw no inferences from the fact that the defendants did not testify. R. 86. The district court correctly denied Grinolds' motion for a new trial on this ground.

■ Grinolds contends that a second instance of prosecutorial misconduct occurred during the state's cross-examination of a defense witness, Chris Onstott. The defendant asserts that the prosecution asked a series of questions that dealt neither with the subject matter of the direct examination or with the credibility of the witness:

> Q (By the prosecutor, Mr. Mosman) Isn't it true that your acquaintanceship includes a sexual relationship?
>
> A Definitely not.
>
> MR. BOWLES: Your Honor, I'd object to that as being immaterial, irrelevant, and not for any purpose as far as impeachment is concerned as to the testimony of this witness.
>
> THE COURT: Overruled. The answer will stand.
>
> MR. BOWLES: What was the answer?
>
> THE WITNESS: Definitely not.
>
> Q (By Mr. Mosman) Definitely not.
>
> A I've never had sex with Jeff.
>
> Q Isn't true that you were pregnant with his child last fall?
>
> A No.
>
> Q And that you terminated that pregnancy?
>
> A I can prove that I haven't—I'll be more than happy to because I have nothing to hide.
>
> . . . .
>
> Q (By Mr. Mosman) And so its your testimony you did not lie at the preliminary hearing when you said that you didn't have sex with Jeff.
>
> A No.
>
> Q And you didn't lie today when you say that you've never had sex with Jeff.
>
> A No.
>
> . . . .

> Q All right. Has she [Lucinda Groseclose] ever seen you and Jeff having sexual intercourse?
>
> A No.
>
> Q And you've never told Lucinda Groseclose that you've had sexual intercourse.
>
> A No.
>
> Q Did you ever tell her that you had sexual intercourse with Jeff at a church?
>
> A No.

Tr. Vol. II, 304–06. In denying Grinolds' motion for a new trial the district court in its written order readily disposed of the defense contention that this was improper cross-examination, and also prejudicial:

> Onstott's direct testimony concerned telephone conversations with the victim, M.C., in which M.C. allegedly told Onstott that she, M.C., had made up the story concerning Grinolds. M.C.'s purpose in making up the story was to protect herself from her mother's wrath. Onstott's bias and motivation was explored when she was cross examined concerning her relationship with Grinolds. Onstott denied any relationship beyond that of a casual friend. Subsequent examination of Onstott and other witnesses established that Onstott and Grinolds had had a long term intimate relationship. This testimony included assertions and denials of sexual intercourse on various occasions and in various locations, including a church. There were also questions concerning a possible abortion.

Grinolds asserts that *State v. Boothe,* 103 Idaho 187 [646 P.2d 429] (Ct.App. 1982) proscribes this type of evidence of prior sexual activity by Grinolds. This assertion is unfounded. Even assuming that *Boothe* stands for the proposition asserted, the evidence was admitted for the purpose of showing Onstott's bias or prejudice in favor of Grinolds. The establishment of such bias or prejudice is a permissible method of impeaching a witness. See *State v. Guinn,* 114 Idaho 30 [752 P.2d 632] (Ct.App.1988) and *State v.*

*Palin,* 106 Idaho 70 [675 P.2d 49] (Ct. App.1983).

R. 84–85.

Grinolds in his appellate brief also claims prejudicial error and denial of his right to a fair trial because of the prosecutor's *cumulative* pattern of misconduct, citing to *State v. Estes,* 111 Idaho 423, 725 P.2d 128 (1986); *State v. LePage,* 102 Idaho 387, 630 P.2d 674 (1981); *State v. Buzzard,* 110 Idaho 800, 718 P.2d 1238 (Ct.App.1986); and *State v. Robinson,* 115 Idaho 800, 770 P.2d 809 (Ct.App.1989):

> In particular, Mr. Grinolds complains of two of the prosecutor's acts which when combined deprived Mr. Grinolds of a fair trial. First, Mr. Mosman, in his rebuttal closing, made reference, inferentially, to the co-defendant, Powers, not taking the stand. It is well settled that an individual has a fundamental right to remain silent and require the prosecution to prove him in violation of the law. The Idaho Court of Appeals has recently stated that it is 'fundamental error' when the state calls attention to the defendant remaining silent. *State v. Poland,* 116 Idaho 34, 773 P.2d 651 (Ct.App.1989). In *Poland,* during an interview the defendant invoked her Miranda right and remained silent.

> . . . .

> Mr. Mosman, in his rebuttal closing, clearly makes reference to Mr. Powers' silence and inferentially to Mr. Grinolds' silence.

>> [T]hat is, that he wants to be up front, and he wants to be open and honest with you, and he wants all the truth to come out, then he would have stood here today, through his attorney, and said, . . . .

> (Tr, Vol. II of II, p. 377, L. 3–6).

> The only inference one could draw from this statement is that Mr. Mosman was attempting to convince the jury that 'if' the truth is to come out then the defendant would take the stand and tell the truth. Clearly, these remarks are in violation of the fifth and fourteenth amendments to the United States Constitution and in violation of article I, section 13 of the Idaho Constitution. It appears that Mr. Mosman's comment was not inadvertent but was intentional and preplanned.

>> I'm confident in reviewing my own notes on what was said that the transcript will bear out that I commented that the defendant Powers had said in his opening remarks that "we want to be fair. And that we want to bring out all of the truth, that we're not going to try and hide anything and that we want the jury to know everything." And my comment after Mr. Porter gave his closing argument in behalf of defendant Powers was that if that's—if that's true, if that's what they really intended to do, if they want to be consistent with their opening statement then Powers would stand up here in closing through his attorney and say, "convict me of lewd conduct."

> (Tr, Vol. I of I, p. 47, L. 11–23).

> . . . .

> Also, during trial, Mr. Mosman conducted cross examination of a defense witness, Chris Onstott, that can only be characterized as an examination intended to inflame the jury. Prior to the witness testifying the defense sought, pursuant to a motion in limine, to limit cross examination regarding the relationship between the witness, Ms. Onstott, and the defendant, Mr. Grinolds. The defense had moved to preclude any questioning on cross examination as to any past sexual activity between Mr. Grinolds and Ms. Onstott. (Tr, Vol. II of II, p. 289, L. 18–25, p. 290, L. 1–4).

> During cross examination Mr. Mosman did ask the witness about whether she had a sexual relationship with Mr. Grinolds. (Tr, Vol. II of II, p. 304, L. 5–7).

> Mr. Mosman continued on to inflame the jury by alleging that the witness [Onstott] became pregnant by Mr. Grinolds and aborted said child.

>> Q: Isn't it true that you were pregnant with his child last fall?

>> A: No.

Q: And that you terminated that pregnancy?

A: I can prove that I haven't— ...

(Tr, Vol. II, p. 304, L. 16–20).

Further, Mr. Mosman continued to arouse the passions of the jury by alleging that sexual intercourse occurred in a church.

Q: Did you ever tell her that you had sexual intercourse with Jeff at a church.

A: No.

(Tr, Vol. II, p. 306, L. 10–12).

Rule 611 of the Idaho Rules of Evidence states:

Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.

IRE Rule 611(b) (1985).

Rule 403 of the Idaho Rules of Evidence states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

IRE Rule 403 (1985).

The prosecutor blatantly violated these rules of evidence, with the approval of the court over defense objections, in cross examining the witness beyond the question of whether she had a sexual relationship with Mr. Grinolds. The witness answered that question. The only purpose of eliciting further testimony was to taint the credibility of the witness and inflame the passions of the jurors. Mr. Mosman evidently felt it was necessary to appeal to the passions and prejudices of the religious beliefs of members of the jury as well as to any pro-life beliefs of members of the jury. Thus, the prosecutor denied the defendant a fair and impartial trial.

Mr. Mosman not only violated Idaho Rules of Evidence 611 and 403 (1985), but also violated case law defining Mr. Mosman's method of cross examination as being improper. The defense specifically objected to the prosecutor's cross examination, unless the prosecution was prepared to offer proof of the allegations being made.

MR. BOWLES: Your Honor, I'm going to object to cross examination unless the prosecution is prepared to provide proof of the allegations they're making.

MR. MOSMAN: The State is prepared, your Honor.

(Tr, Vol. II of II, p. 304, L. 22–25).

Examples of the prosecution's improper questions on cross examination include:

Q: And you told her that you wouldn't come down here and lie for Jeff again, didn't you?

A: No.

(Tr, Vol. II of II, p. 301, L. 8–10).

Q: (By Mr. Mosman) Isn't it true that your acquaintanceship includes a sexual relationship?

A: Definitely not.

MR. BOWLES: Your Honor, I'd object to that as being immaterial, irrelevant, and not for any purpose as far as impeachment is concerned as to the testimony of this witness.

THE COURT: Overruled. The answer will stand.

(Tr, Vol. II of II, p. 304, L. 5–11).

Q: (By Mr. Mosman) Do you recall a time during this acquaintanceship with Mr. Grinolds that Jeff told you that you should go kill yourself?

A: No.

(Tr, Vol. II of II, p. 306, L. 23–25, p. 307, L. 1).

Q: Have you talked to Linda Groseclose after your testimony at the preliminary hearing?

A: On the telephone.

Q: And during that conversation on the telephone, isn't it true that she asked you why you lied at the preliminary hearing?

A: She said that she was asked something about why I lied. I told her that I didn't lie.

Q: So it would be your testimony that you didn't say to her, "They'll never find out"?

A: No.

(Tr, Vol. II of II, p. 308, L. 7–16).

The prosecution prejudiced the jury by making factually unsupported allegations. *See Preuss v. Thomson*, 112 Idaho 169, 730 P.2d 1089 (Ct.App.1986).

The prosecution alleged its preparation to prove the allegations made (Tr, Vol. II of II, p. 304, L. 22–25), but rather than supplying proof the prosecution requested, and was granted, a special jury instruction that the testimony of Lucinda Groseclose was not admitted for proving its content.

These cumulative acts of misconduct by the state deprived the defendant of a fair trial.

Appellant's Brief, 21–28.

In denying Grinolds' motion for a new trial, the district court adequately discussed and dealt with the contention of a cumulative pattern of prosecutorial misconduct:

Grinolds also asserts that the prosecutor improperly cross examined Onstott by asking questions relating to an abortion and then not providing any evidence to support the assertions contained in his questions. The evidence in this regard is less than clear. Certainly Onstott was asked about an abortion, which she denied. In rebuttal, the State called Linda Groseclose who testified that she had had a conversation with Onstott about an abortion.

The rules concerning this method of cross examination have been stated in *State v. Fowler*, 13 Idaho 317 [89 P. 757] (1907) where at 317, [89 P. 757] the court stated:

Where a prosecutor does ask this class of questions and then fails to produce the parties with whom he claims the witness had talked, the jury should be specifically instructed to disregard the evidence entirely.

While the testimony of Groseclose did not directly contradict Onstott, at least some evidence was offered on the subject. This attempted impeachment on a collateral matter, not directly tied to Onstott's relationship with Grinolds *was im-*

*proper.* However, I do not find that it rose to such a degree of error as to mandate a new trial.

None of the issues raised by Grinolds concerning the cross examination of Onstott are sufficient to persuade me that it is likely that a new trial would result in a different verdict.

. . . .

Grinolds asserts that the State in closing argument impermissibly commented on Powers' failure to testify by making the following comment

If Lonnie Powers was to be consistent with his opening statement; that is, that he wants to be up front, and he wants to be open and honest with you, and he wants all the truth to come out, then he would have stood here today, through his attorney, and said, Find me guilty of lewd conduct.

Grinolds claims that this statement was impermissible and a comment on the fact that both Powers and Grinolds did not testify.

First it should be noted that this reference was solely to Powers. Second, it should be noted that neither defendant objected to this statement at the time. Third it should be noted that Instruction No. 18 properly instructed the jury that they were to draw no inferences from the fact that the defendants did not testify.

I cannot find that the prosecutor's statement, no matter how phrased, constitutes an impermissible comment on or in fact any comment on either of the defendants failure to testify. I find it to be proper, albeit strong, argument that Powers' attempt to place the culpability on the victim lacked candor.

. . . .

After reviewing my notes, the records and files in this matter, and the arguments of the parties, I find and conclude that Grinolds received a fair trial and that there is no just basis for granting him a new trial.

R. 85–87 (emphasis added).

The district court's rulings are patently fair. Perceiving no valid reason for inter-

fering, the judgment of the district court is affirmed.