## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 39870

| | |
|---|---|
| STATE OF IDAHO, | ) 2013 Unpublished Opinion No. 638 |
| | ) |
| Plaintiff-Respondent, | ) Filed: August 27, 2013 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| RYAN LEE JOHNSON, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction for domestic battery in the presence of a child, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Ben Patrick McGreevy argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

WALTERS, Judge Pro Tem

Ryan Lee Johnson appeals from his conviction and sentence for domestic battery with traumatic injury in the presence of a child. Specifically, Johnson challenges the district court's order denying his request for a unanimity instruction and alleges that the district court abused its discretion by imposing an excessive sentence. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2011, Johnson and his ex-wife, Melissa, were involved in a domestic dispute. The alleged dispute occurred at Melissa's residence and involved physical altercations that occurred in multiple rooms of the house. Johnson and Melissa's son, C.J., was present during the dispute. Johnson was charged with domestic battery with traumatic injury in the presence of a child, Idaho Code §§ 18-903(a), 18-918(2), 18-918(4), and attempted strangulation,

1

I.C. § 18-923.[1]  With respect to the domestic battery charge, the information alleged that Johnson used violence upon Melissa by "restraining her, throwing her down, slapping her in the face, hitting her on the head, and/or by throwing her into a bathtub."

Prior to trial, Johnson requested that the district court provide the jury with a unanimity instruction for the domestic battery charge and instruct the jury that it must unanimously determine which underlying battery constituted the crime of domestic battery.  The district court denied the request.  Johnson, Melissa, and their son, C.J., testified at trial as to their individual recollection of the events that occurred on October 5.  Each testimony varied from the others as to the nature of the dispute and the order of the events.  Specifically, Melissa testified that Johnson was the aggressor and physically attacked her, while Johnson testified that Melissa attacked him and that his actions were done in self-defense.  However, each person testified that the alleged physical altercations occurred in different rooms throughout the house.  Following the presentation of evidence, the district court provided the jury with an instruction that stated:

> In order for the defendant to be guilty of Domestic Battery with Traumatic Injury in the Presence of a Child, as charged in Count I, the state must prove each of the following:
>
> . . . .
>
> 3. the defendant [Johnson] committed a battery upon [Melissa] by restraining her, throwing her down, slapping her in the face, hitting her on the head, and/or by throwing her into a bathtub;

The jury convicted Johnson of domestic battery in the presence of a child and acquitted him of the attempted strangulation charge.  The district court imposed a unified term of fifteen years with three years determinate.  Johnson timely appeals.

---

[1]  Johnson was also charged with another count of domestic violence in the presence of a child for an incident that occurred on September 26, 2011.  The jury convicted him of a lesser included charge of misdemeanor domestic battery and he was sentenced to a six-month concurrent jail sentence.  Johnson does not challenge his misdemeanor domestic battery conviction and sentence in this appeal.

## II.

## ANALYSIS

Johnson claims: (1) the district court erred by denying his request for a unanimity jury instruction; and (2) the district court abused its discretion by imposing an excessive sentence in light of the mitigating factors that exist.[2]

### A.    Unanimity Jury Instruction

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). "An error in jury instructions only constitutes reversible error when the instruction misled the jury or prejudiced the party challenging the instruction." *Severson*, 147 Idaho at 710, 215 P.3d at 430.

"Under Idaho law, a trial court is required to instruct the jury that it must unanimously agree on the defendant's guilt in order to convict the defendant of a crime." *Id.* at 711, 215 P.3d at 431. An instruction that the jury must unanimously agree on the facts giving rise to the offense is generally not required. *Id.* However, a unanimity instruction is necessary "when the defendant commits several acts, each of which would independently support a conviction for the crime charged." *Id.* Thus, the question that arises is whether the underlying conflicts constituted several acts of criminal conduct or one continuous course of criminal conduct. "Whether a course of criminal conduct constitutes a single or multiple offenses depends on 'whether or not the conduct constituted separate, distinct and independent crimes' and 'requires an inquiry into the circumstances of the conduct and consideration of the intent and objective of the actor.'" *Miller v. State*, 135 Idaho 261, 267, 16 P.3d 937, 943 (Ct. App. 2000) (quoting *State v. Bush*, 131 Idaho 22, 33-34, 951 P.2d 1249, 1260-61 (1997)).

In the instant case, evidence was presented at trial indicating that a conflict occurred at Melissa's residence. At trial, Melissa testified that the argument started in her bedroom and continued throughout multiple rooms in the house. According to Melissa, the fighting started

---

[2]    The Honorable Cheri C. Copsey presided over the trial and made the determination that a unanimity instruction was inapplicable. The Honorable Michael E. Wetherell presided over the sentencing hearing and imposed Johnson's sentence.

when she was dressing for work in her bedroom and Johnson entered the room and started yelling at her. She then left the bedroom and went into the bathroom. Johnson followed her into the bathroom, pushed her into the bathtub, threw her around, and then left the bathroom and went into the dining room. Melissa returned to the bedroom, but Johnson entered again and pushed her to the floor, pushed her to the bed, pinned her down, and slapped her in the face. Johnson released Melissa after Melissa grabbed him in the private area. Johnson then took a cellular phone from Melissa and went into the living room. Melissa followed him into the living room asking for the phone. Johnson pushed her to the ground and pinned her down. Melissa bit Johnson on the arm and he released her. Melissa gathered some belongings and began to leave the residence when Johnson grabbed her, put his hands on her throat, and strangled her for five seconds. Melissa and C.J. left the residence when Johnson released her throat.

Johnson testified that Melissa attacked him and that his actions were in self-defense. According to Johnson, the two were arguing in the bathroom when Melissa began swinging at him. He deflected her blows and she tripped into the bathtub. He left the bathroom and went into the dining room. Melissa followed him and struck him with a wind chime. He grabbed her by the arms and tried to subdue her against the wall. Thereafter, he let go and went into the living room and sat on the couch. Melissa followed him into the living room and began swinging at him. He pushed her back and she tripped over the coffee table and fell to the ground. Johnson then pinned her to the ground but released her when she bit him and grabbed him in the private area. Johnson then went into the kitchen and started smoking. He tried to talk to C.J. but Melissa blocked his path and pushed him. He then grabbed her, pushed her against the wall, but let go when she spit in his face. Melissa then left the residence.

C.J. testified that Johnson went into the bedroom and began yelling at Melissa. Then Johnson and Melissa went into the kitchen and then the living room, continually yelling at each other. C.J. testified that Johnson pushed Melissa, Melissa pushed him back, and then Johnson pushed her again causing her to fall to the ground. Johnson then pinned Melissa to the ground. Thereafter, C.J. and Melissa left the residence and Johnson spit on Melissa as they were leaving.

Prior to the trial, Johnson requested a unanimity instruction be included in the jury instructions for the crime of domestic violence in the presence of a child. The district court denied the request, finding that the underlying acts were not separate and distinct acts but one continual altercation.

On appeal, Johnson argues that the district court erred by failing to instruct the jury that it "must unanimously agree on which of the alleged batteries constituted the alleged domestic violence." He argues that the evidence presented at trial described four separate conflicts that occurred on October 5. He alleges that the four conflicts were separated by "discernible intervening time periods, where both [the victim] and [Johnson] went into different rooms and engaged in other behaviors." Without a unanimity instruction, Johnson claims that some jurors could have convicted him based on one conflict, while other jurors could have convicted him based on a different conflict; thus, preventing the jury from arriving at a unanimous conclusion.

Johnson points to three cases to support his claim. First, Johnson points to this Court's decision in *Miller*. In that case, Miller was charged with one count alleging manual-genital contact. The victim testified of six specific incidents over a twenty-nine-month period where Miller committed manual-genital contact. This Court determined that each incident "was separated by an indeterminate period of time, was of brief duration, and involved unique circumstances." *Miller*, 135 Idaho at 267, 16 P.3d at 943. Thus, we held that Miller committed multiple offenses and a unanimity instruction was required.[3] *Id.* Based on this holding, Johnson argues that *Miller* stands for the proposition that where the defendant could commit the alleged crime multiple times, the jury must be unanimous in their determination of the defendant's *actus reas* if the conduct constituted separate, distinct, and independent crimes. Therefore, he asserts that the instant case required a unanimity instruction, as his underlying actions constituted "separate, distinct, alleged batteries, with discernible time periods in between."

Johnson also points to two Idaho Supreme Court cases for support. In *State v. Grinolds*, 121 Idaho 673, 827 P.2d 686 (1992), the defendant asserted that his protection against double jeopardy was violated by reason of being charged with two acts of rape. In that case, Grinolds had sexual intercourse with the victim in a bedroom and then went into the living room for a period of time. Thereafter, Grinolds re-entered the bedroom and engaged in another act of sexual intercourse with the victim. The Supreme Court determined, based on the facts in the record indicating that Grinolds engaged in two separate acts of sexual intercourse separated by

---

[3]    However, this Court also determined that the lack of a unanimity instruction resulted in harmless error. *Miller*, 135 Idaho at 268, 16 P.3d at 944.

an unspecified amount of time, that there were two separate and distinct acts of rape for double jeopardy purposes. *Id.* at 675, 827 P.2d at 688.

In *Bush*, the defendant asserted that his protection against double jeopardy was violated because he was charged with lewd conduct with a minor and an infamous crime against nature. In that case, Bush entered a home at night and forcibly performed fellatio on a boy. Thereafter, he forced the boy on a couch, tied his arms behind his back, tied a t-shirt around his face, and again performed fellatio on the boy. The Supreme Court held that the facts demonstrated that the incidents were two separate and distinct acts, with other events occurring between the acts. *Bush*, 131 Idaho at 34, 951 P.2d at 1261.

Based on the foregoing cases, Johnson argues that "where one crime is alleged to have been committed by alternative means and where the defendant is alleged to have committed separate and distinct acts, Idaho law requires unanimity even if the acts are alleged in a single count." Johnson is correct that the aforementioned cases involved discernible time differences in between the alleged acts that contributed to a finding of multiple criminal conduct. In *Miller*, the incidents occurred over a two-year period. In *Grinolds*, the incidents occurred with a period of time in between. In *Bush*, the incidents occurred with a period of time in between in which the perpetrator placed the victim on a couch, tied his hands with a cord, and tied a shirt over his face. However, a similar scenario is not present in the instant case. Here, the underlying acts were not separated by discernible time differences. Johnson argues that the act of moving to a different room is sufficient to break up the argument into multiple criminal episodes. We disagree. The record demonstrates that Johnson and Melissa were arguing and fighting as they moved from room to room. C.J. testified that he heard "yelling" and witnessed fighting as Johnson and Melissa moved from the bedroom to the kitchen to the living room. Further, both Johnson and Melissa testified that after a physical altercation in one room, Melissa followed Johnson into the living room where another physical altercation immediately occurred. Additionally, Melissa testified that Johnson followed her from the bedroom to the bathroom where he allegedly threw her into the bathtub. Therefore, based on the record, we conclude that the underlying acts were not separated by discernible time periods, but instead occurred immediately from one room to the next; thus, the entire altercation constituted one continual course of criminal conduct.

This conclusion is consistent with our recent decision in *State v. Moffat*, 154 Idaho 529, 300 P.3d 61 (Ct. App. 2013). In that case, we stated that "it is generally held that when a person

6

commits multiple acts against the same victim during a single criminal episode and each act could independently support a conviction for the same offense, for purposes of double jeopardy the 'offense' is typically the episode, not each individual act." *Id.* at 533, 300 P.3d at 65. In that case, Moffat was charged with domestic battery and attempted strangulation following a dispute wherein he grabbed the victim by the hair, grabbed her around the throat, threw her around the room, pushed her into objects, and pushed her to the ground. We held that Moffat's actions constituted one offense and stated that:

> an attempt to separate Moffat's grabbing of his girlfriend's hair and throwing her around the room and into objects and pushing her to the ground from grabbing her throat during the same dispute is an impermissible attempt . . . to divide a single crime into a series of temporal or spatial units to avoid double jeopardy limitations.

*Id*. at 534, 300 P.3d at 66.

Consistent with our holding in *Moffat*, we conclude that Johnson's actions constitute one course of criminal conduct. Thus, the district court did not err in denying Johnson's request for a unanimity instruction.

## B.     Excessive Sentence

Johnson claims that the district court erred by giving him an excessive sentence. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a

sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In the instant case, the State requested that Johnson receive a unified term of fifteen years with four years determinate for his conviction of domestic battery with traumatic injury in the presence of a child. Johnson requested a period of retained jurisdiction. As discussed above, the district court sentenced Johnson to a unified term of fifteen years with three years determinate.

Johnson claims that the district court abused its discretion and imposed an excessive sentence. Specifically, Johnson asserts that the district court failed to consider several mitigating factors and that the district court improperly focused on Johnson's acquitted charge of attempted strangulation.

First, Johnson argues that the district court failed to adequately consider the mitigating factors of Johnson's difficult upbringing, his remorse, his willingness to accept responsibility, and his willingness to receive treatment. At the sentencing hearing, defense counsel told the court that Johnson, as a young child, witnessed the severe abuse of his stepbrother. Johnson was also introduced to drugs and alcohol at a young age. Additionally, in the presentence investigation report (PSI), Johnson stated that he was responsible for the domestic violence and recognized that he needed treatment. However, at the sentencing hearing, Johnson told the court that "I never denied any kind of physical contact during the altercation, but I thought that, you know, parts of it was righteous."

The district court, in pronouncing Johnson's sentence, recognized that Johnson witnessed child abuse as a child, but stated that "[p]eople who observe domestic violence are just as likely as [sic] to avoid domestic violence as they are to commit it." The district court also considered Johnson's past criminal history and concluded that "a lesser sentence would depreciate the seriousness of the crime." Further, the court considered the PSI, which stated that Johnson was a "high risk for reoffending," and also stated that individuals who tested at Johnson's level reoffended 74 percent of the time. Additionally, the district court pointed out that Johnson already went through prior treatments, including two drug courts and a period of retained jurisdiction. Finally, the court admonished Johnson for his "righteous" comment and stated that "[t]here is no evidence that any part of this was righteous."

Based on the foregoing, we conclude that the district court properly considered mitigating factors. The district court considered Johnson's childhood, his alleged remorse, his acceptance

of responsibility, and his willingness to participate in treatment. However, the district court also considered the protection of society and the goals of deterrence, rehabilitation, and retribution and concluded that a sentence of incarceration was necessary in order to achieve the objectives and goals of sentencing.

Second, Johnson argues that the district court failed to apply the due caution standard required of the court when considering acquitted conduct, resulting in an abuse of discretion. During the trial, Melissa testified that Johnson "[p]ut his hands on [her] throat and squeezed." However, C.J. testified that he did not see anything happen to Melissa's neck. During the sentencing hearing, defense counsel argued that the jury's acquittal of the attempted strangulation charge demonstrated that the jury discredited Melissa's testimony and believed C.J.'s testimony. Defense counsel then implied that Melissa likely either provoked the attack or the fight was a "mutual combat situation." Following counsel's remarks, the district court expressed its doubt that the attempted strangulation acquittal was a result of the jury discrediting Melissa's testimony and solely relying on C.J.'s testimony. The district court stated:

> With regard to the attempted strangulation, I have only had one conviction for an attempted strangulation. Having listened to the testimony, I doubt very seriously it was because of [C.J.'s] testimony. It's the--I have problems with the attempted strangulation statute. Juries have problems with it. They expect that there's going to be much more evidence than there ever is in an attempted strangulation. In fact, the--not just the police reports, but also the reports from the hospital indicate there were marks on her throat which substantiated her testimony. So I don't think it had anything to do with [C.J.'s] testimony at all.

The district court further stated that "there was physical evidence to at least suggest that at least some portion of [Melissa's] version is correct."[4]

Johnson contends that the district court abused its discretion by believing that the jury only acquitted Johnson on the attempted strangulation charge because of a misunderstanding of the jury instructions. Johnson asserts that this conclusion "demonstrates a failure to apply the due caution required of a Court when considering acquitted conduct."[5] We disagree. The

---

[4] The district court also discussed and considered the similarity between Melissa's version of events and a prior victim's claim of attempted strangulation by Johnson.

[5] Johnson asserts that, at a minimum, the district court should have applied the "due caution" standard when considering acquitted conduct as an aggravating factor in sentencing.

district court did not focus on the acquitted charge, but only expressed problems that juries have with attempted strangulation charges. Further, the district court only did so to explain its conclusion that the jury could have believed Melissa's testimony and still produced an acquittal for attempted strangulation.

Moreover, the Idaho Supreme Court has previously stated that:

> There should be no limitation placed on the information presented to the court regarding the background, character, and conduct of the defendant being sentenced. In *State v. Johnson*, 101 Idaho 581, 583, 618 P.2d 759, 761 (1980), we quoted with approval from *Williams v. New York*, 337 U.S. 241, 247 (1949), as follows: "[M]odern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." Information that a sentencing court can rely upon includes a defendant's past criminal behavior that resulted in a conviction, *Witte v. United States*, 515 U.S. 389, 397 (1995); the defendant's prior uncharged criminal conduct, *id.*; and the defendant's prior conduct for which he was tried and acquitted.

*State v. Flowers*, 150 Idaho 568, 574, 249 P.3d 367, 373 (2011). Therefore, it was appropriate for the district court to consider the acquittal of Johnson's attempted strangulation charge. Based on the foregoing, we conclude that Johnson has failed to show that the district court abused its discretion in pronouncing his sentence.

### III.

### CONCLUSION

Johnson failed to demonstrate that the district court erred by denying his request for a unanimity instruction. Additionally, Johnson failed to show that the district court abused its discretion by executing an excessive sentence. Accordingly, Johnson's judgment of conviction and sentence for domestic battery with traumatic injury in the presence of a child are affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

*See State v. Wickel*, 126 Idaho 578, 581, 887 P.2d 1085, 1088 (Ct. App. 1994) ("A sentencing court may, with due caution, consider the existence of defendant's alleged criminal activity for which no charges have been filed, or where charges have been dismissed.").