**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45028**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: July 13, 2018** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) |
| GREGG JAMES MILLER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Steven C. Verby, District Judge.

Judgment of conviction and sentence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Gregg James Miller appeals from his judgment of conviction and sentence for eluding a police officer and injury to child. Miller argues two instances of fundamental error arose during his trial. First, he asserts one of the jury instructions, combined with a statement from the prosecutor's closing argument, created a fatal variance from the information. Second, he argues the prosecutor committed misconduct during closing argument. The judgment of conviction and sentence is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Miller's wife called the police after she saw Miller driving erratically in their neighborhood with their son in the vehicle. An officer responded and met Miller's wife in front of the house. While Miller's wife was discussing her concerns with the officer, Miller's wife

pointed out Miller, who was driving towards the house. As the officer went to speak to Miller, Miller began driving away, in reverse, from the officer. Miller then turned his vehicle around and drove away as the officer turned on his overhead lights and pursued Miller. The officer estimated Miller was traveling at forty miles per hour in the neighborhood's fifteen mile-per-hour zone. Miller drove past a number of bystanders, navigated a few turns, and eventually stopped in a field. His son got out of the vehicle and ran away from the scene towards a residence while Miller got out of the vehicle and walked slowly in the other direction. The officer ordered Miller to the ground at gunpoint and arrested him.

Miller was charged with felony eluding a police officer, in violation of Idaho Code § 49-1404(2), and misdemeanor injury to child, in violation of I.C. § 18-1501(2). Concerning the injury to child charge, the information alleged Miller violated the statute "by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement." At trial, the jury was instructed that Miller was "charged with the crime of Injury to a Child, alleged to have been committed as follows: . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement." The jury was also instructed about the elements of the crime:

> In order for the Defendant to be guilty of Injury to a Child, the state must prove each of the following:
>
> 1. On or about April 16, 2016;
> 2. In the State of Idaho;
> 3. The Defendant Gregg James Miller;
> 4. Had the care or custody of S.A.M.;
> 5. Who was a child under 18 years of age, and;
> 6. The Defendant willfully caused or permitted the child to be placed in a situation that may have endangered the child's person or health.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the Defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the Defendant guilty.

Additionally, the jury was instructed that it must decide the case using the evidence before it and that the lawyers' arguments were not evidence. Defense counsel made no objection to any of these instructions.

During closing argument, the prosecutor discussed the dangerous driving behavior Miller exhibited when he "came within about 5 feet of this group of elderly persons that were standing outside the church on the roadway. About 10 feet from a group of children. . . . Those also were

2

near hits." The prosecutor also stated if a bicyclist "had just taken a few more strides on his bike, he may not have been here for you today to testify for you." The prosecutor, after discussing the danger to Miller's son during the car chase, also said,

> Not only in his driving here did he endanger this child. When he stopped in that field and let that child run out of there knowing that the police were right there, right there behind him, you remember [the officer] pulls his gun, anything could have happened. So this was definitely a dangerous situation that he placed his child right smack in the middle of.

Defense counsel made no objection to any of these statements and instead addressed all of them during closing argument.

The jury found Miller guilty of both eluding a police officer and injury to child. On the eluding charge, Miller was sentenced to a unified sentence of four years, with one year determinate, with the court retaining jurisdiction. On the injury to child charge, Miller was sentenced to twenty-eight days, with twenty-eight days credit for time served. Miller timely appeals.

## II.

## ANALYSIS

Miller asserts two instances of fundamental error. First, Miller argues that the elements jury instruction for the injury to child charge, combined with one of the prosecutor's statements in closing argument, created a fatal variance from the information. Second, Miller argues three different statements made by the prosecutor during closing argument amount to prosecutorial misconduct.

Claims of fundamental error are analyzed using the rubric articulated by the Idaho Supreme Court in *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010). There, the Court explained that alleged errors "not followed by a contemporaneous objection" at trial are subjected to:

> a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless.

*Id.* at 228, 245 P.3d at 980.

3

**A.** **There Was No Fatal Variance Regarding the Injury to Child Charge**

The fundamental error doctrine represents a balance between fundamental fairness, *id.* at 224, 245 P.3d at 976, and the finality of judgments, i.e., preventing people fairly convicted from using "the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record." *Kotteakos v. United States*, 328 U.S. 750, 759-60 (1946). A claim of fundamental error functions as an exception to the general rule that errors not preserved for appeal by objection at trial are not reviewable. Despite that exception, the Court in *Perry* noted the gateway to fundamental error review does not swing so wide as to encompass all claims of due process violations: "Idaho has limited appellate review of unobjected-to-error cases." *Perry*, 150 Idaho at 225-26, 245 P.3d at 997-98. For example, the fundamental error analysis does not apply to violations of statutory rights based in criminal procedural rules or evidentiary rules. *Id.* at 228, 245 P.3d at 980. This limited review balances the conflicting interests in "finality of judgments, and the associated incentive that must be given for defendants to properly object before a trial court," and "fundamental justice inherent in the concept of a fair trial." *Id.* at 225, 245 P.3d at 977; *see also State v. Dunlap*, 155 Idaho 345, 362, 313 P.3d 1, 18 (2013); *State v. Grove*, 151 Idaho 483, 490, 259 P.3d 629, 636 (Ct. App. 2011). In adopting this balance, the Court recognized that appellate review for claims of unobjected-to error is strictly circumscribed to a category of cases where there are significant infringements of constitutional rights. *See Perry*, 150 Idaho at 226-28, 245 P.3d at 978-80.

**1.** **Miller's claim of variance does not establish a clear violation of an unwaived constitutional right**

Turning to the facts of this case, we first address Miller's claim that a fatal variance at his trial amounts to fundamental error. Miller points to two discrepancies to support his argument. First, he points to the discrepancy between the information, which included specific language that Miller had committed injury to child by endangering his child in the car chase (car chase theory), and the injury to child elements jury instruction, which did not include the specific facts alleged. Second, he points to a statement made by the prosecutor in closing argument, which argued Miller had committed injury to child by placing his child in a situation where an officer was wielding a gun after the car chase ended (gun theory). Miller contends these two discrepancies allowed the jury to convict him of injury to child based on the gun theory, a factual scenario that was not alleged in the information.

4

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). Our task in resolving the issue presented is two-fold. First, we must determine whether there is a variance between the information used to charge Miller with injury to child and the instructions presented to the jury. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *Id.* A variance between a charging instrument and a jury instruction necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy.[1] *State v. Windsor*, 110 Idaho 410, 417-18, 716 P.2d 1182, 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221.

In *State v. Ormesher*, 154 Idaho 221, 296 P.3d 427 (Ct. App. 2012), this Court reviewed a claim that a fatal variance with a charging document had occurred. *Id.* at 223, 296 P.3d at 429. There, the information alleged the defendant committed sexual abuse by touching a minor's breasts, while the jury instruction setting out the elements of the crime did not reference the alleged touching. *Id.* at 223-24, 296 P.3d at 429-30. Another jury instruction defined "sexual contact" as "any physical contact between the child and any person which is caused by the actor, or the actor causing the child to have self contact." The defendant argued the jury instructions allowed the jury to find the defendant guilty based on any sort of sexual contact, not just the touching alleged in the information. *Id.* The Court concluded that the jury instructions were not consistent with the information and thus constituted a variance. *Id.* at 224, 296 P.3d at 430. However, the Court noted the defendant did not show "he was misled or embarrassed in the preparation of his defense" because he offered a defense, through witness testimony, against the other factual scenarios of sexual contact discussed at trial that the jury could have used to convict him of sexual abuse. *Id.* at 224-25, 296 P.3d at 430-31. Thus, the Court determined that the variance was not fatal. *Id.* at 225, 296 P.3d at 431.

Miller's argument in this case is similar to that of the defendant in *Ormesher*. Miller claims the information in his case is at odds with the injury to child elements jury instruction and

---

[1] On appeal, Miller does not argue that any variance in the injury to child charge left him open to the risk of double jeopardy. Additionally, nothing in the record leads us to believe he might be subject to a second prosecution for this charge.

the prosecutor's statement in closing argument that Miller endangered his child by placing him in a situation where an officer was wielding a gun. He contends the elements instruction, together with the prosecutor's statement, allowed the jury to find him guilty based upon the gun theory, an unalleged factual scenario. As in *Ormesher*, Miller presented a defense against the gun theory through cross-examination of the police officer, such that Miller was not misled or embarrassed in the preparation of his defense and, thus, to the extent there was a variance, the variance was not fatal.

Miller's claim of variance is even less strong than Ormesher's because unlike *Ormesher*, where evidence was introduced to support the variant theory during the prosecution's case-in-chief, here, the State did not put on sufficient (if any) evidence from which the jury could have found beyond a reasonable doubt that Miller was guilty on the alternate gun theory. During the State's case-in-chief, the State called the officer as a witness. The officer testified that Miller's son was running away from the scene in the opposite direction of Miller when the officer arrived in the field and that Miller's son entered a residence. The officer's body camera footage, which was shown to the jury, never showed the child present during the encounter. No evidence was presented that Miller's child was in dangerous proximity to Miller or the officer when the officer arrested Miller. Thus, the prosecutor's statement about the gun theory in closing argument was an argument without evidentiary support. Moreover, the jury was instructed the arguments of the attorneys were not evidence the jury could consider. We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).

In contrast, the State presented a significant amount of evidence to support the car chase theory from which the jury could convict Miller of injury to child, including multiple exhibits and testimony from bystanders and the officer. In fact, the officer testified that Miller acknowledged he put his son in danger as a result of the car chase. The officer's body camera footage also shows Miller admitting, "What I did was wrong," in reference to driving recklessly with the child in the car. The jury was instructed to reach its decision only after considering the evidence presented. The evidence presented was not sufficient to prove the gun theory beyond a reasonable doubt, but was sufficient to prove the car chase theory. As a result, the general elements jury instruction, combined with the prosecutor's statement, did not create a fatal variance from the information. Because the variance was not fatal, Miller cannot establish the

first prong of the fundamental error test. Because Miller cannot establish a violation of an unwaived constitutional right, we decline to address the remaining *Perry* factors.[2]

**B.      The Prosecutor's Statements Do Not Amount to Fundamental Error**

Miller argues the prosecutor's statement about the gun theory, along with two other statements the prosecutor made during closing argument about the bystanders who witnessed the car chase, also amount to fundamental error as prosecutorial misconduct. Miller contends the statements were inflammatory; engineered to appeal to the emotions, passions, and prejudices of the jury; and misstated evidence.

At trial, the officer testified that during the car chase, he observed Miller pass a group of two or three children who were within three to five feet of the roadway and a group of elderly people who were within three to five feet from the roadway. The officer also testified he observed a group of kids on tricycles or Big Wheels in the middle of the road near an intersection. A bicyclist testified that as he approached an intersection, Miller's vehicle sped in front of him within a few feet.

---

[2]     Although we do not address the second prong of *State v. Perry*, 150 Idaho 209, 229, 245 P.3d 961, 981 (2010), we note that application of the second prong has been challenging. This is so despite the requirement that "error must be plain which is synonymous with clear or, equivalently, obvious." *Id.* at 209, 229, 245 P.3d at 981 (internal quotation marks omitted). The violation of an unwaived constitutional right must be plain from the record. In addition, there must be no need for information outside of the appellate record to determine whether counsel's failure to object was a tactical decision. In other words, information within the appellate record must clearly demonstrate that counsel did not make a tactical decision not to object. Because the record will rarely provide evidence of counsel's decision-making process, it is, and should be, rare that the second prong of *Perry* can be established.

*Perry* was never intended to broadly apply to all claims of unobjected-to error on direct appeal. The opposite is true. There appears to be a misconception that unobjected-to errors can, or should, always be raised on direct appeal as claims of fundamental error. Such a claim should only be made where the record itself, without additional information, demonstrates that the failure to object was not or could not have been tactical. On the one hand, the argument often made by the State is that the defendants are "sandbagging the court," or in other words, "remaining silent about [their] objection[s] and belatedly raising the error[s] only if the case does not conclude in [their] favor." *Id.* at 224, 245 P.3d at 976 (internal quotation marks omitted). On the other hand, the appellant often simply concludes that "it is clear from the record that the failure to object was not tactical" or "failing to object could not have benefitted the defendant." Neither argument is particularly helpful, and neither is tied to information in the record. An appellant does not meet the burden of proof necessary to establish the second *Perry* prong by conclusory argument.

"Prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Sanchez*, 142 Idaho 309, 318, 127 P.3d 212, 221 (Ct. App. 2005). Due process concerns are implicated when "a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial." *Perry*, 150 Idaho at 227, 245 P.3d at 979. Similarly, prosecutors have a duty to avoid misrepresenting or mischaracterizing evidence and unnecessarily inflammatory tactics, including impermissible appeals to emotion, passion, or prejudice during closing argument. *State v. Lankford*, 162 Idaho 477, 502, 399 P.3d 804, 829 (2017); *State v. Phillips*, 144 Idaho 82, 87, 156 P.3d 583, 588 (Ct. App. 2007). However, the "right to due process does not guarantee a defendant an error-free trial, but a fair one." *State v. Reynolds*, 120 Idaho 445, 451, 816 P.2d 1002, 1008 (Ct. App. 1991). Indeed, counsel is "given wide latitude in making their arguments to the jury and discussing the evidence and inferences to be made therefrom." *State v. Severson*, 147 Idaho 694, 720, 215 P.3d 414, 440 (2009); *see also State v. Porter*, 130 Idaho 772, 786, 948 P.2d 127, 141 (1997); *State v. Estes*, 111 Idaho 423, 428, 725 P.2d 128, 133 (1986); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995).

In *Perry*, the Court analyzed whether unobjected-to statements by a prosecutor amounted to prosecutorial misconduct, in violation of a defendant's right to a fair trial under the Fourteenth Amendment of the United States Constitution. *Perry*, 150 Idaho at 227-30, 245 P.3d at 979-82. The prosecutor had improperly elicited vouching testimony from witnesses and, despite warning from the district court, referred to the improper testimony during closing argument. *Id.* at 230, 245 P.3d at 982. The Court ultimately concluded the prosecutor's statements constituted misconduct, yet held that the misconduct did not amount to a clear violation of an unwaived constitutional right. *Id.* Thus, the Court determined that Perry's claim was not within the limited category of claims for which it would grant fundamental error review. *Id.* at 228, 245 P.3d at 980. The interest in the finality of the trial court's judgment and in incentivizing Perry to object during the trial was not outweighed by the interest that Perry suffered a fundamental injustice during trial.

**1.    The prosecutor's statement about the bicyclist did not amount to misconduct**

Miller first contends that the prosecutor's closing argument statement, which told the jury that if the bicyclist "had just taken a few more strides on his bike, he may not have been here for you today to testify for you," was inflammatory and sought to appeal to the passions and prejudices of the jury by suggesting that Miller almost hit and killed the bicyclist. Miller also contends the statement misstated evidence because the bicyclist was approaching a stop sign, so the bicyclist was required to stop, and if he had not, any injury would have been the fault of the bicyclist.

The testimony at trial shows the prosecutor's statement about the bicyclist was a reasonable inference the prosecutor drew from the evidence. The bicyclist testified at trial that while riding his bike toward an intersection, his friend screamed out from behind the bicyclist. He then testified that he stopped immediately and saw a car fly by a few feet in front of him. Afterwards, the bicyclist testified the experience left him "shook up," "petrified," "nervous," and "really stiff." This testimony shows that the prosecutor's statement about the bicyclist was based on evidence and, although highlighting the danger to the bicyclist, was not impermissibly inflammatory nor a misstatement of the evidence. Therefore, this statement cannot be deemed prosecutorial misconduct in violation of Miller's due process rights.

**2.    The prosecutor's statement about the pedestrians did not amount to misconduct**

Miller next contends that the prosecutor's closing argument statement describing Miller coming "within about 5 feet of this group of elderly persons that were standing outside the church on the roadway. About 10 feet from a group of children. . . . Those also were near hits," was inflammatory and sought to appeal to the passions and prejudices of the jury by suggesting that Miller almost hit and killed the pedestrians. He also contends the statement misstated evidence because (1) the officer's testimony at trial was that the elderly persons were about five feet *from* the roadway, not *on* the roadway, (2) the officer's testimony reflected his observations of the location of the pedestrians when he drove by them, not their location when Miller drove by them, and (3) Miller never drove off the road so the pedestrians were never in danger.

The testimony at trial shows the prosecutor's statement about the pedestrians was a reasonable inference the prosecutor drew from the evidence. The officer testified he saw two or three kids "within 3 to 5 feet from the edge of the roadway," but could not see their location when Miller drove past them, although they were stopped, watching the cars pass. The officer

9

then testified that he saw "a group of elderly people standing probably the same distance, 3 to 5 feet from the roadway also watching as we went by. I know some of them were particularly close to the road." However, the officer testified he could not see their location when Miller drove past them, although they were stopped, watching the cars pass. Last, the officer testified he saw a group of kids on tricycles or Big Wheels in the middle of the road near an intersection where Miller had turned. The officer testified he was between 500 and 800 feet behind Miller, who was traveling at forty miles per hour. The officer also testified that the paved road, for the most part, was uncurbed and had no sidewalks and that Miller's driving kicked up dirt, indicating that Miller was driving on or close to the edge of the road. The prosecutor's characterization of these circumstances as "near hits," while stressing the danger to the pedestrians, was not impermissibly inflammatory nor a misstatement of the evidence. It is not unreasonable to characterize "near hits" as a vehicle coming within three feet of a person. Therefore, this statement cannot be deemed prosecutorial misconduct in violation of Miller's due process rights.

### 3. The prosecutor's statement about the child's presence at the officer's armed confrontation with Miller did not amount to misconduct

Last, Miller contends that the prosecutor's closing argument statement about the gun theory misstated the evidence. The statement was:

> Not only in his driving here did he endanger this child. When he stopped in that field and let that child run out of there knowing that the police were right there, right there behind him, you remember [the officer] pulls his gun, anything could have happened. So this was definitely a dangerous situation that he placed his child right smack in the middle of.

Miller argues the officer's testimony and body camera video show that Miller's child had run away from the scene by the time the officer pulled out his gun.

The officer testified that when he arrived in the field where Miller had driven, the officer saw a "young child run off the--out of the passenger side to run to the east" toward some trees and a residence. Later, the officer also testified, "first the child ran out the passenger side, and as I'm pulling up then the driver gets out slowly out of the driver's side and starts slowly walking to the west." After the officer arrested Miller at gunpoint, the officer testified he asked Miller "where his son went and eventually I found out that he went into that residence where he was running towards." The officer's body camera footage never shows Miller's child present during the arrest.

10

The officer's testimony and the body camera footage show the prosecutor's statement differed from the evidence about the danger posed to Miller's child during the arrest, as the child was not present for the arrest. However, defense counsel addressed the State's argument in its closing argument, using that opportunity to challenge the credibility of the officer. As such, to the extent the statement mischaracterized the evidence, Miller was able to challenge that mischaracterization, and the jury was properly instructed that closing statements were not evidence and that it should base its decision on the evidence presented. We presume that the jury followed the district court's instructions. *See Kilby*, 130 Idaho at 751, 947 P.2d at 424; *Hudson*, 129 Idaho at 481, 927 P.2d at 454. Miller has not established a violation of an unwaived constitutional right and we need not address the other prongs of the *Perry* analysis.

## III.

## CONCLUSION

Because Miller has failed to prove the variance at trial or the prosecutor's misconduct amounted to fundamental error, we affirm Miller's judgment of conviction and sentence.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.